436 So.2d 1234 (1983)
STATE of Louisiana In the Interest of Angelque Rebecca MARCHADIE.
No. 83-CA-308.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 1983.
Rehearing Denied September 16, 1983.
Writ Denied November 18, 1983.
Arthur Kingsmill, William C. Credo, III, Gretna, for plaintiff-appellee.
*1235 Theresa A. Beckler, Metairie, for defendant-appellant.
Before CHEHARDY, CURRAULT and GRISBAUM, JJ.
GRISBAUM, Judge.
This is an abandonment action initiated by the State of Louisiana pursuant to La. R.S. 9:403. After a two-day trial, the Juvenile Court of the Parish of Jefferson rendered a judgment declaring James H. Marchadie to have abandoned his child, Angelque Rebecca Marchadie.
The primary issue is whether the evidence clearly and convincingly establishes that the child's father "failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility." La. R.S. 9:403 A(1)(b). We find it does not, and we reverse.
FACTS
The uncontested facts are as follows: James H. Marchadie and Terri Ann Aucoin Munster are the natural parents of Angelque Rebecca Marchadie. Terri and James physically separated in September 1979, and James moved to Texas thereafter. While in Texas, James lived with a friend and attempted professional wrestling but was unsuccessful. He returned to Jefferson Parish in November 1979. In November 1979, Terri obtained a judicial separation in which she was given custody of their daughter; however, the separation decree was silent as to child support and visitation. From November 1979 to approximately February 1980, James lived with his brother in Morgan City, Louisiana. During this time he was unemployed. When he returned to the New Orleans area, he opened an air conditioning/refrigeration business, Care Enterprises, which eventually failed. In May 1980, James filed a Rule for Visitation, and on June 12, 1980, a consent judgment was entered which required James to pay $35 a week child support and allowed him a weekly visit with the child on Sundays. From October 3, 1980 to December 19, 1980, James worked for Keen Marine Service and earned $1975 (gross). James and Terri were divorced in November 1980. Since the divorce, Terri remarried, and Angelque remained in her custody. Also, in December 1980 James was incarcerated. Elvin Munster, Terri's new husband, instituted adoption proceedings for Angelque in June 1981. In April 1982, this abandonment action was instituted upon an affidavit of the Assistant District Attorney for the Juvenile Court of Jefferson Parish.
The facts concerning James' conduct toward his child following the breakup of the marriage and his incarceration are in dispute. At the abandonment hearing, Terri testified James had no relationship with the child after their physical separation in September 1979. Other than $200 she took on her own initiative from a $500 loan his step-father gave her to forward to James, Terri has never received child support from September 1979 until the present. She did concede James never "quarreled over" her keeping the $200. She claims James "attempted" to kidnap their child in November 1979. Admitting he requested to see his daughter prior to the filing of his Rule for Visitation, she testified she refused his requests and made no arrangements for James to talk with his child. However, after the visitation order, she claims she never refused James visitation, but he never visited his child. Moreover, after his incarceration in December 1980, she testified James placed numerous collect calls for which she never accepted charges. According to Terri, his calls came, however, only after the adoption proceedings were instituted in June 1981. She did concede James had sent his daughter cards, letters, and gifts but claimed these also came only after the adoption proceedings had been instituted. She also admitted she never gave these gifts or cards to the child.
Terri's account of James' conduct is basically corroborated by her husband, Elvin Munster, and her mother, Gloria Sumlin. Ms. Sumlin, however, conceded that in May or June 1980, James inquired as to Angelque's clothing size and asked for her assistance *1236 in selecting clothing for his daughter but never followed through on his request.
James, on the other hand, claims prior to his incarceration he was struggling financially. He described numerous debts and attempts to find a job in the area of his trainingrefrigeration/air conditioning from September 1979, the date of their separation, to February 1980. He claims he made no profits in his new business started in March 1980 and was finally forced to close it. With the exception of the $200 out of his step-father's $500 loan to him, he admits during the time he was working he sent no money for child support. He claims he told his estranged wife to take what she needed out of the $500 sent for him. After his incarceration, he sent his child a $35 wallet and a Bible as presents which were received but never given to the child. He stated he was continuously attempted to make contacts with the childto talk to her or communicate through lettersbut his ex-wife has never allowed this.
Donna Keen, wife of his most recent employer, Lamar Keen, described James as expressing concern for his daughter in the months just prior to his arrest. Since her daughter was also in the same dance class as James' daughter, Ms. Keen became somewhat of a liaison between James and his daughter after his incarceration. She related James' ex-wife did not want her to speak about James to the child. She explained since his incarceration, James writes her family regularly always inquiring about his daughter.
The trial judge analyzed the facts from the perspective of two periods of time. The first period is from September 1979 when Terri and James first separated until December 1980 when James was incarcerated. The second period is from the date of his incarceration in December 1980 until the date of the filing of this abandonment action. The trial court considered the crucial period to be evaluated was the first period when James was capable of supporting his child. The trial judge states,
I find, from all the evidence that I have heard in this case, and all the documents that have been presented herein that there is no reasonable doubt in my mind but that all of the actions or lack thereof or lack of actions that were taken by Mr. Marchadie, the father of the child between September 1979 and December 1980 indicate to me that he has failed to provide for the care and support of his child and this indicates to me an intention to permanently avoid all parental responsibility. (Emphasis added)
We find this conclusion of fact clearly wrong.
APPLICABLE LAW
Louisiana recognizes the relationship between parents and their natural/biological offspring is one of the most fundamental of human relationships only to be severed by strictly following certain statutory provisions for surrender, abandonment, or adoption. La.R.S. 9:402-462. Under the abandonment statutes, a child is considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove the parent has failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility. La.R.S. 9:403 A(1)(b). When evidence of failure to provide for the care and support of the child for a period of at least four months is introduced, a presumption is created that the parent intended to permanently avoid parental responsibilities, and the parent must present evidence which rebuts this presumption. La.R.S. 9:403 A(2). Due to its harsh consequences, all reasonable doubt should be resolved against entering a decree of abandonment, which is in derogation of the natural right of the parent. In the Interest of Shumaker, 341 So.2d 583, 585 (La.App. 2d Cir.1977).
While recognizing the appropriate statutory and case law's burden of proof in an abandonment action and also finding this action was not an attempt to circumvent the consent requirement for adoption, the trial judge nevertheless thought the *1237 evidence indicated James Marchadie's intention to permanently avoid all parental responsibilities. We disagree with this conclusion. His focus on the events prior to Marchadie's incarceration indicates his concern for Marchadie's actions as a free man, capable of providing financial support for his child. In his reasons for judgment, he stated James' failure to provide for the care and support of his child indicated his intention to permanently avoid all parental responsibility. However, failure or even refusal of a parent to support a child is not sufficient cause to justify a decree of abandonment. Shumaker, 341 So.2d 583, 585; In the Interest of Foret, 398 So.2d 78, 81 (La.App. 4th Cir.1981).
The important question is whether James' conduct both prior and subsequent to his incarceration indicates his intention to avoid parental responsibility. See, La. R.S. 9:403 A(1)(b). Relevant to our analysis is the uncontested fact he called his wife continuously during the period prior to his filing of the Rule for Visitation and did inquire as to the child's welfare although his motivation for his calls is in dispute.
Most importantly, prior to his incarceration, he initiated judicial action to establish visitation rights and entered into a consent judgment for the child's support with all the legal consequences and sanctions which such a judgment entails. These actions do not evidence an intent to avoid parental responsibility albeit he took little actual responsibility for the child's financial support during this period.
We also find relevant his post-conviction gifts and letters from prison and his concern demonstrated by his asking his mother-in-law, sister-in-law, and a friend for pictures or news of his daughter. In light of the totality of circumstances, James Marchadie's conduct does not indicate an intention to avoid parental responsibility.
For these reasons, the judgment of the Juvenile Court is reversed, and it is ordered that this action be dismissed.
REVERSED AND RENDERED.