622 So.2d 716 (1993)
STATE of Louisiana In the Interest of P.R.B. and M.A.B., Jr.
No. 93-CA-29.
Court of Appeal of Louisiana, Fifth Circuit.
June 9, 1993.
*717 Joan Benge, Andrea Janzen, Harvey, for plaintiff/appellee, State of Louisiana.
Robin Shulman, Indigent Defender Bd., Harvey, for minors/appellees, P.R.B. and M.A.B., Jr.
Keith R. Credo, Metairie, for Mother/appellant, C.T.B.
Dorothy Pendergast, Dist. Attorney's Office, Gretna, for State.
*718 Mitchell A. Briley, Jr., Kenner.
John V. Lawrence, Gretna, for Sheila and James Martin and Tina and Gary V. Ricks.
Before KLIEBERT, C.J., and BOWES and CANNELLA, JJ.
BOWES, Judge.
Appellant, Cynthia Briley, appeals a judgment of the Juvenile Court of Jefferson Parish terminating her parental rights to her two children, Patricia and Mitchell, Jr. We annul and set aside the judgment as follows hereinafter.

FACTS
The testimony and evidence were outlined by the trial court and are thoroughly supported by the record, and we quote them in pertinent part, omitting for the time being, the conclusions reached by the court on these facts.
Patricia Briley was born to the marriage of Cynthia and Mitchell Briley on February 25, 1990. Mitchell Briley, Jr. was subsequently born to the couple on March 1, 1991. Due to difficulties experienced following their son's birth by Cesarean section, Mr. and Mrs. Briley voluntarily placed the older child, Patricia, in the home of Mr. Briley's adult daughter and her husband, the Ricks.
In June of 1991, the Ricks obtained a Temporary Retraining Order from the 24th Judicial District Court preventing the removal of Patricia from the State of Louisiana without court approval. The following month, the Ricks and the Brileys entered into a consent judgment pertaining to custody and visitation. In court on July 2, the parties agreed that the Ricks would have temporary custody of Patricia and that the parents would have visitation on alternating Wednesdays from 4:00 to 7:00 p.m. and Sundays from 1:00 to 4:00 p.m. The consent judgment further stipulated that each party was to be subject to three random drug tests on 24 hour notice, and to submit to evaluations. As to the visitation, the parties agreed that visits would be arranged through, supervised by, and conducted at the home of Patricia Flynn, a mutual friend.
The mother testified that she did visit Patricia between 7 and 9 times from July through October 31, 1991. However, Ms. Flynn testified that only 2 visits were conducted, one on July 4 and another on July 19, and that no other visits were made. Mr. Briley's testimony was that 2-3 visits were made, corroborating Ms. Flynn's testimony.
Officer Hugh testified that on October 31, 1991, Halloween night, Kenner police received a complaint of possible child neglect at the Briley residence. The investigating officer discovered the door of the residence open, the child Mitchell awake and playing on the floor, and the father passed out. The mother was found at a party down the street, highly intoxicated. Upon arriving back at the apartment, the mother went to the bathroom and slashed her writs (sic) with a razor. An ambulance was called, and the mother was transported to the hospital. In cooperation with DSS/OCS, arrangements were made for relatives, the Ricks, to assume care of the child. The Ricks cared for Mitchell for a couple of days. Upon the recommendation and/or approval of DSS/OCS, the child was subsequently placed with another adult daughter of Mr. Briley and her husband, the Martins.
Cynthia Briley remained hospitalized for approximately 2 weeks. Upon her discharge, she went to live with her mother and sister in Mississippi. Mr. Briley testified that a few days after Cynthia's discharge, she called him for money. Some time later she returned to the residence to remove her things. Cynthia testified that she went back to the house to retrieve clothes, furniture and personal belongings.
In February of 1992, the Martins instituted custody proceedings in 24th Judicial District Court as to Mitchell. The whereabouts of the mother were allegedly unknown and a curator was appointed. The curator was unable to locate Cynthia, despite efforts including a personal *719 ad in the Times-Picayune. The Martins were awarded provisional custody of Mitchell in March, and a TRO was issued preventing removal of the child from the Martins or from the State without court order.
In April of 1992, the Martins and the Ricks contacted the District Attorney's office at Juvenile Court about possible institution of an abandonment action against Cynthia Briley. The evidence indicates that about that same time, Cynthia had contacted an attorney and initiated legal action regarding the children.
The Petition for Termination of Parental Rights asks that Cynthia Briley's parental rights be terminated in accordance with the provisions of Ch.C.Art. 1015(9). The relevant language is as follows:
Art. 1015. Grounds.
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
* * * * * *
(9) Abandonment of the child
(a) The child had been abandoned by his parent for a period of at least four months.
(b) The parent has failed to provide for the child's care and support, without just cause, thus demonstrating an intent to permanently avoid parental responsibility.
[This paragraph of article 1015 is a revision of former R.S. 9:403(A)(1)(b).]
Article 1035 states that under this ground, the state has the burden of proving the facts by clear and convincing evidence. The state must, then, affirmatively prove that the parent has failed to provide for a child's care and support for at least four months. State in Interest of Moore, 474 So.2d 478 (4 Cir.1985). Once this is met, the burden shifts to the parent to prove just cause for the failure. Moore, supra. See also State in Interest of Marchadie, 436 So.2d 1234 (5 Cir. 1983). The court is then left to determine whether the totality of the circumstances indicate an intent to permanently avoid parental responsibility and abandonment of the child.
The state alleges that more than four months passed between October 31, 1991 and the filing of this petition during which time Cynthia Briley failed to provide for the care and support of her children, Patricia and Mitchell.... The testimony presented clearly indicated that, during this period, Cynthia provided no support whatsoever for her children and failed to visit or communicate with the children even once. Furthermore, the evidence was clear that the whereabouts of the mother during this time was unknown to the caretakers of the children, unknown to Mr. Briley, unknown to DSS/OCS, and unknown to the 24th Judicial District Court.
The burden is thus shifted to the mother to prove just cause for this failure to care and support her children during this time.
* * * * * *
The evidence presented established that the mother did not visit either of her children during the relevant period, although she came into New Orleans, by her own admission, 6 to 8 times to visit with friends. The mother testified that she did not visit because the caretakers would not let her see them. However, she did not attempt to set up any visitation through Ms. Flynn, as agreed upon at court. The mother testified that she voluntarily discontinued the court-ordered visitation with Patricia due to the presence and actions of Tina Ricks at the visits. However, no evidence indicated that she pursued enforcement, alteration or clarification of the visitation agreement through her attorney or through the caretaker's attorney, both of whom were known to her.
Neither did she contact DSS/OCS to arrange visits with Mitchell. Cynthia testified that she did not call OCS, although she recalled speaking with child protection at the hospital and, according to her sister's testimony, the family friend, Connie, had informed them of OCS's involvement.

*720 Mr. Briley testified that he never prevented visitation, but encouraged it. Cynthia testified that Ms. Flynn did not ever refuse her visitation. Tina Ricks testified that she never prevented visitation, never moved her residence or place of employment or changed her phone number. Sheila Martin testified that she was not contacted regarding visitation, although OCS had informed her not to let Mitchell go with his mother if she came around.
The restraining orders issued by the 24th Judicial District Court did not prohibit Cynthia from visiting her children. Rather, they prohibited the removal of the children from the state without court approval.
* * * * * *
Cynthia testified that her mother and sister tried to contact the Ricks on 1 occasion from Mississippi and on 2 occasions from local numbers. She further testified that she herself tried to reach Tina Ricks by phone one time in November from a friend's house and that she left a message with Ms. Flynn. In other testimony, Cynthia stated that 1 attempt was made to contact her son Mitchell, and that her family attempted to contact Patricia by leaving messages at Gabby's restaurant, where Tina Ricks is employed.
Ms. Briley's sister testified that calls were made regarding the children by herself and her mother on behalf of Cynthia Briley. According to the sister, 2 calls were made in November to "Connie", a close friend of the family. Calls were also reportedly made in December to Gabby's from a local phone number. The sister further testified that calls were made in January to Connie, to Mr. Briley, to Gabby's, and to the office of Cynthia's attorney. After Valentine's Day, another call was made to Gabby's from a local number.
By stipulation at trial, the testimony of Lee Plaiswirth was accepted to the extent that he was present during phone calls made at Cynthia's request. Cynthia Briley's mother also testified that calls were made from her home in the presence and at the request of Cynthia.
Few of the reported calls are corroborated by the phone bills introduced into evidence. The bills indicate 2 calls to Connie (11/16/91, 11/17/91), 1 call to Gabby's (1/22/92), 1 call to her attorney (1/22/92), and no calls to Ms. Flynn during the period in question. This court takes judicial notice of the fact that these same bills indicate substantially more calls made to her friend Lee Plaiswirth (4 calls in November, 6 calls in December, 11 calls in January) which were not established as involving the children.
Tina Ricks testified that she received no personal contact from Cynthia or her sister or mother and that she was never contacted at Gabby's. Patricia Flynn testified that Cynthia never contacted her after the second and last visit in July of 1991. The State further elicited testimony that no contact was made with DSS/OCS by or on behalf of Cynthia Briley, and that in fact OCS could not discover her whereabouts.
Assuming that even several attempts were made, most of the calls admittedly were not made by the mother herself. The mother and her witnesses testified that the calls were made on her behalf, at her request and in her presence. Cynthia stated that this was done because she was "not strong enough", "not mentally stable" and to avoid confrontation, yet she admitted to making one call herself and testified that she was not disabled. Her sister stated that she made calls because the hostility between the families created a "difficult situation" and that it was "too painful" for Cynthia to do it herself, but also testified that Cynthia was rational and capable of making the calls.
Finally, this court is aware of no written communication by the mother, although the sending of cards and letter may have been less painful and would have avoided confrontation.
As to the frequency and amount of support payments, there were none. Cynthia testified that she did not recall *721 providing any support and neither the Ricks nor the Martins testified that they ever received any support. Cynthia stated that she never mailed money to the caretakers because she thought they would keep it. By way of mitigation, testimony was presented indicating that Cynthia was not employed during the relevant period. The evidence further suggests to this Court, however, that Cynthia was able to maintain herself, retain counsel, purchase Christmas gifts for her friend Lee and his family, and travel with some frequency to the the (sic) New Orleans area.
* * * * * *
Finally, this court considers the extent to which Cynthia pursued a course of action to regain custody. This Court applauds Cynthia's efforts to get her life straightened out: apparent success in AA, working toward her GED, applying for vocational training. Most recently, a new attorney was retained to pursue legal action regarding the children. Coincidently, Cynthia's activation of legal proceedings began during the same time that this proceeding was instituted. The actual dates of which action was filed first is not determinative. State v. Canady, 430 So.2d 265 (5 Cir.1983). Thus, this court must consider this fact as but one in the totality of the circumstances.
As to cooperation with a state agency, although DSS/OCS made no specific demands on the mother during this period, the mother made no effort to contact DSS/OCS even to make inquiries as to her children.
* * * * * *
Our review of the record discloses that the vast majority of the above facts and findings are correct. However, we find, after much deliberation, that the learned trial judge made an error of law in reaching his conclusion. We have examined the applicable law and jurisprudence and we are obliged to conclude that the facts of this case do not constitute abandonment so as to justify a termination of parental rights.
We are aware of the "manifest error" rule as reiterated in Rosell v. ESCO, 549 So.2d 840 (La.1989), and Martin v. East Jefferson General Hosp., 582 So.2d 1272 (La.1991). However, we do not take issue with the findings of fact made by the trial court, but with the conclusions of law drawn therefrom.
Under Rosell, supra,
... when the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits.
We have so determined the facts of this case as mandated in Rosell, supra; however, due to the thorough job done by the trial court, we feel it unnecessary to rephrase them for purposes of this appeal.

ANALYSIS
Under former LSA-R.S. 9:403, from which section 9 of LSA-C.Ch.C. art. 1015 was derived, a child was considered abandoned when it was proven by clear and convincing evidence that the parents failed to provide for the care and support of the child, for at least four months, under circumstances showing an intention to permanently avoid parental responsibility.
The cases under that section are therefore generally applicable to the current version of the law under LSA-C.Ch.C. art. 1015(9). In these cases, the factors to be used in determining the intent to permanently avoid parental responsibility included:
(1) The nature and extent of contacts between the parent and child, including any mitigating circumstances;
(2) The frequency and amount of support payments, also considering any mitigating circumstances; and
(3) The extent to which a parent, who had relinquished custody, has pursued a course of action to regain custody, including any legal action or any cooperation with a state agency.
*722 State in Interest of D.L., 457 So.2d 141 (2 Cir.1984); State In Interest of Moore, 474 So.2d 478 (4 Cir.1985).
None of these factors, standing alone, is determinative of parental responsibility. A court must necessarily examine each case individually and make a determination based on the totality of the circumstances involved in that case.

State in Interest of K.D., 586 So.2d 692 (La.App. 2 Cir.1991).
Due to the harsh consequences of declaring a child to be abandoned, the statute is strictly construed. State in the Interest of K.D., supra; State in the Interest of Foret, 398 So.2d 78 (La.App. 4 Cir.1981), writ denied, 401 So.2d 987 (La.1981).
A decree of abandonment may only be granted where the evidence clearly manifests the parent(s) intention to permanently avoid their responsibilities toward the child with all reasonable doubts being resolved against such a decree.
State in the Interest of Canady, 430 So.2d 265 (La.App. 5th Cir.1983); State in Interest of K.D., supra.
Strict construction of the statute in question requires us to conclude that the trial court erred, as a matter of law, in determining that the facts supported a finding of abandonment under LSA-C.Ch.C. art. 1015(9). Initially, it is clear that once the court found that Patricia was voluntarily placed with the Ricks, the case with regard to her, then fell under LSA-C.C. art. 1015(10) which states:
(10) Failure to maintain contact with the child
(a) The child was voluntarily placed in the physical custody of some other individual or married couple.
(b) The parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years.

A finding that the child was voluntarily placed in the physical custody of another necessarily implies some intention on the part of the parent to have the child provided for, and is a different basis entirely than section (9), abandonment. Under section (10), it appears that a parent can lose parental rights by failing or refusing to communicate (for a period of two years), even though she may have provided for the physical support. Under section (9), the parent may forfeit rights for an unjustifiable failure to support, even though he may regularly communicate with the child.
As we read these sections, it is clear that the legislature intended to distinguish between a parent who leaves her child outright, without regard to its physical care and support, and a parent who voluntarily places the child with another individual (not the State), thus fulfilling the "care and support" requirements. Otherwise, there would be no need for a ground for termination under section (10) and a parent who left the child in the physical care of another, without contributing financial support, could lose her parental rights under the abandonment section. Voluntary placement with another person is distinguishable from abandonment under the jurisprudence also. See State In the Interest of Foret, 398 So.2d 78 (La.App. 4 Cir.1981).
In Patricia's case, it was therefore inappropriate and improper for the State to bring an action against Mrs. Briley under Section (9), since the child was voluntarily placed with the Ricks. The applicable period for failure of communication under that statute is two years, which had not elapsed as of the date the petition was filed. The trial court should have concluded, as a matter of law, that under the facts of the case, the petition as to Patricia under section (9) should have been dismissed.
Neither do we find that either child, Patricia or Mitchell, was abandoned within the meaning of section (9). During the period of her recuperation after her admission to Charity Hospital[1] Mrs. Briley was *723 an admitted alcoholic, unemployed mother living with her own mother and family, and dependent on them for support. She was additionally dependent on her estranged husband for income. In fact, the crux of the matter, and the major mitigating circumstance, is the undeniable fact that Mrs. Briley is a recovering alcoholic and during the period in question (November, 1991 through May, 1992), she was in the very early stages of recovery. We have given the matter extremely close scrutiny, and after lengthy consideration, we conclude that Mrs. Briley did not, under all the particular facts and circumstances present here, evidence an intent to permanently avoid parental responsibility. The factors enunciated in State in Interest of D.L., supra, and other cases, are qualified by the term "mitigating circumstances" which we cannot ignore.
Behavior resulting from addictive disorders can obviously result in desertion, abandonment, or a failure to contact which may ultimately give rise to a termination proceeding in certain cases. It is clear from the present case, however, that Mrs. Briley's condition precluded her from effectively attempting to contact her children during this short period of time, and certainly her personal situation and the very probable inability to secure and hold employment effectively prevented any real ability to financially support them.
Section 9 requires the failure to support be "without just cause." Other circumstances, including a longer period of non-support, may well require a different conclusion. In the present case, however, we find that the circumstances constituted "just cause." Failure to support must not be equated with the inability to do so.
Contact between parent and child is an element of the issue of "abandonment" under the cases cited hereinabove. Here, direct contacts with the children were not made during the relevant time period. However, it seems clear that Mrs. Briley was not mentally or emotionally stable, and did request that her family contact the Ricks (she was unaware that Mitchell was with the Martins). It was stipulated at trial that the calls were made at Cynthia's request. The antipathy and animosity between Mrs. Briley and her stepdaughters as recognized by the trial judge several times in the transcript, contributed heavily to the failure of direct communication with the children, or the Ricks or the Martins, and while it is not an excuse for Mrs. Briley's lack of action, we cannot ignore the fact that it is a strong factor mitigating against a finding of abandonment. We find that her actions, while minimal, do not support a finding that she intended to permanently avoid parental responsibility, and do not, as a matter of law, constitute abandonment.
Louisiana recognizes the relationship between parents and their natural/biological offspring is one of the most fundamental of human relationships only to be severed by strictly following certain statutory provisions for surrender, abandonment, or adoption. La.R.S. 9:402-462. Under the abandonment statutes, a child is considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove the parent has failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility. When evidence of failure to provide for the care and support of the child for a period of at least four months is introduced, a presumption is created that the parent intended to permanently avoid parental responsibilities, and the parent must present evidence which rebuts this presumption. La.R.S. 9:403 A(2). Due to its harsh consequences, all reasonable doubt should be resolved against entering a decree of abandonment, which is in derogation of the natural right of the parent.
State in Interest of Machadre, 436 So.2d 1234 (La.App. 5 Cir.1983), citations omitted.
We find that Mrs. Briley's efforts to recover from alcoholism and straighten out *724 her life comparable to those of the mother in State, In the Interest of Canady, 430 So.2d 265 (La.App. 5 Cir.1983). There, Mrs. Canady stated that she was ill, had financial problems, and intended only temporary placement of her children. While she did not contact the state for long periods of time, she was actively involved in working to get her life in order so that she could be a suitable mother. In that case we refused to find that termination was in order. We do likewise here.
We are aware that the four month period in which the state proved failure of contact is the statutory minimum. However, we find that all things considered, the four month period is, in this particular case, too short a period of time to find, under all the circumstances present here, that Mrs. Briley evidenced an intent to avoid permanently parental responsibility.
We further find, however, that the state is not precluded from bringing another petition should the situation remain in stasis, or even deteriorate. These children are extremely young, and are entitled to a stable, secure, and loving environment. They should not be returned to Mrs. Briley as a reward for her attempts to improve her life. Rather, their best interest must be seriously considered in the question of their future custody, a question which is not technically before us now. Our holding here is strictly limited to the conclusion that, under all the facts and circumstances before us, the trial court made an error of law in finding that Mrs. Briley had either abandoned her children or failed to support them without just cause.
We have given great deference to the findings of the trial court in this matter, an obviously heartbreaking case with which both courts have struggled mightily.
However, we are limited to the burden of proof required of the state:
Proof by clear and convincing evidence requires more than `a preponderance of the evidence,' the traditional measure of persuasion, but less than `beyond a reasonable doubt,' the stringent criminal standard. Proof by a preponderance requires that the evidence, taken as a whole, show that the fact sought to be proved is more probable than not. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence.
State in Interest of K.D., supra. [citations omitted.].
We hold that the state failed to carry its burden of proof, by clear and convincing evidence, that Mrs. Briley abandoned her children and failed to support them without just cause.
For the foregoing reasons, the judgment of the Juvenile Court terminating the parental rights of Mrs. Briley is annulled and set aside.
JUDGMENT ANNULLED AND SET ASIDE.
NOTES
[1] We do not find the October 31 date, on which Mrs. Briley attempted suicide, to be the appropriate date from which abandonment began. Mrs. Briley was seriously ill at that time and hospitalized. By no stretch of the imagination should the court determine such condition and circumstances constituted abandonment.