| ¡.EDWARDS, Judge.
Defendant Todd Kramer appeals a judgment of the juvenile court terminating his parental rights to the child T.M.H. We affirm.
T.M.H. was born on July 7, 1986. On June 30, 1998, the State filed a petition for termination of parental rights against the child’s mother, Terry Louise Holmes, and against the alleged biological father, Kramer. The petition alleged that the whereabouts of both parents was unknown, and that on information and belief, Kramer was deceased. It was further alleged that he had never acknowledged paternity nor enrolled in the putative father registry. The state had no information about him and despite diligent efforts, was unable to verify his death. The petition averred that both parents had abandoned the child. In Kramer’s case, the defendant was alleged to have failed to support the child, or to maintain significant contact since September 6, 1986, at which time the child was placed in the custody of the Office of Community Services, (“OCS”). The |3petition *1218 requested that a curator be appointed to represent the absent parents.
Both parents were located. Ms. Holmes stipulated to the petition and following a hearing, the petition was granted as to her, terminating her parental rights. The matter was set for trial with regard to Kramer. Trial was held in November, 1998, after which the trial court granted the petition as to the defendant under La. Ch.C. art. 1015(4)(b) and (c). From this judgment defendant has appealed.
At the hearing, OCS caseworker Esther Spearman testified that she had been the case manager for T.M.H. since 1988. The child’s mother had told her that the father was the defendant, and that he was deceased. She did not meet defendant until July of 1998, at the time of the termination proceedings. In that ten year period, defendant did not contact the department, nor did he visit with or contact the child. He did not send support, gifts, cards, etc., and did not help the child in any way. He had not seen the child since she was an infant. On cross-examination, the witness stated that although the mother, Ms. Holmes, had informed her “early on” that defendant was deceased, in preparation for the termination proceedings she spoke to Holmes again and was informed at that time that defendant was still alive. Search letters were sent out and an address was located for defendant.
Spearman testified that Ms. Holmes had stated that her (Holmes’) sister, Sherry Washington, may have been available to take custody of T.M.H. and that the defendant was interested in following up that possibility. However, Washington did not appear at an arranged visit.
Kramer testified that at the time the child was born, he was living with Ms. Holmes. He knew that T.M.H. had a lot of birth defects and did visit with her in |4the hospital, donating blood. The home in which they were living when the child was born was so filthy that the child, who had an immune system disorder, could not live there. Kramer never tried to fix up the home or do anything to obtain custody of T.M.H. He last saw her in September of 1986 when she was taken from the hospital by OCS shortly after her birth. He went “to this little court thing in Gretna and was told that she had some rare bone marrow disease.”
Through Ms. Holmes, he knew that T.M.H. was in foster care. He also knew that she had “outrageous” medical bills and that the state would pay them. It would be better “for her well being” if she remained in foster care. He did not call the agency or try to get in touch with the child and soon afterwards, he and Ms. Holmes parted “on bad terms.” Between the time of the child’s birth and the time she was six, he did not try to get information about T.M.H. At about that time, Ms. Holmes told him that the child was deceased. Had he been contacted earlier by OCS, he would have responded to work toward getting custody.
La. Ch.C. art. 1015 reads in pertinent part:
The grounds for termination of parental rights are:
[[Image here]]
(4) Abandonment of the child by placing him in the physical custody of a nonpar-ent or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child’s parent continue to be unknown.
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or [ ¡¡communicating with him for any period of six consecutive months.
*1219 The allegations of the petition must be proven by clear and convincing evidence. Ch.C. art. 1035. In all involuntary termination of parental rights proceedings the accused parent shall be accorded due process of law. Id.
The State must prove the best interest of the child dictates termination of parental rights. State in Interest of Four Minor Children v. D.W., 585 So.2d 1222 (La.App. 2nd Cir.1991). Termination of parental rights is a severe and permanent action which must be scrutinized very carefully. State in the Interest of Z.D., 95-1680 (La.App. 4th Cir. 2/15/96), 669 So.2d 1312. The State must prove a case for termination of the natural parents’ rights by clear and convincing evidence. State in Interest of N.B., 599 So.2d 911 (La.App. 4 th Cir.1992), writs granted, reversed on other grounds 605 So.2d 1134 (La.1992). The Department of Public Services need only fulfill requirements under one applicable provision of La. Ch.C. Art. 1015; factual findings in a parental termination proceeding are subject to the manifest error-clearly wrong standard. State in Interest of V.T., 609 So.2d 1105 (La.App. 2 nd Cir.1992), writ denied 614 So.2d 1269 (La.1993).
State in Interest of H.D., 98-0953 (La.App. 4th Cir. 11/04/98), 721 So.2d 1045, 1047.
Appellant alleges that the court erred in terminating his parental rights because the state failed to provide him with notice of Child in Need of Care (CINC) Hearings or to make reasonable efforts toward reunification and/or make a diligent effort to locate him. We note at the outset that although the State moved to admit the CINC record at the trial, it does not appear from the transcript that the record was admitted. In addition, although we ordered that the appellate record be supplemented with the CINC proceedings, there has been no compliance with this order at this time. We therefore cannot consider that record in our determination.
Under the circumstances of the present case, in order to prevail it was incumbent upon the State to prove that the defendant failed to provide significant | ^support and/or to maintain significant contact with the child for any period of six consecutive months. By his own admission, defendant failed to both contact and contribute to T.M.H.’s support for the first six years of his child’s life. Once the petitioner has established abandonment and failure to provide care and support, the burden shifts to the parent to establish “just cause” and thereby avoid termination. State in Interest of ML, 95-45 (La.9/5/95), 660 So.2d 830, 833; State in Interest of P.R.B., 622 So.2d 716, 719 (La.App. 5th Cir.1993).
The juvenile court is charged with determining whether the totality of the circumstances indicates a parent intended to permanently avoid parental responsibility and abandoned the child. State in Interest of J.K., 97-336 (La.App. 3rd Cir. 10/29/97), 702 So.2d 1154, 1156 citing State in Interest of P.R.B., supra, at 722. Under the particular facts of this case, we cannot find that defendant established just cause in his failure to communicate with or to contribute to the support of T.M.H. His awareness of her illness and of the fact that the State would bear the medical costs of such is no excuse for the dereliction of his parental responsibilities in these regards. His apathetic attitude, displayed toward the child during her first years of life, was not redeemed by his testimony that he was interested in the child’s aunt having custody. The record contains no evidence that as of the date of trial, months after he was contacted by the State regarding termination, that he had yet pursued visitation, communication, or support. A parent who professes an intention to exercise his or her parental rights and responsibilities must take some action in furtherance of the intention to avoid having those rights terminated, even when the parent is mentally ill or impaired. State in Interest of S.M., 98-922 (La.10/20/98), 719 So.2d 445, 450; State in Interest of D.T. v. K.T., 29,796 (La.App. 2nd *1220 Cir. 6/18/97), 697 So.2d|7665, 670.[1] Defendant did not carry his burden of proving just cause.
The State dismissed its action under Ch.C. art. 1015(4)(a), which requires a diligent search for the abandoning parent. With regard to 1015(4)(b) and (c), we note there is no legislative mandate either enunciated or implied requiring reasonable efforts toward a diligent search or “reunification.” Attempted reunification is not an necessary element of proof for the state in cases of financial or emotional abandonment.
Defendant also avers that his constitutional right to equal protection was violated by unequal application of the law. In this assignment of error he claims that he was discriminated against because of his race and gender (Caucasian male). The child’s mother is an African-American.
We note in this regard that the constitutional argument is urged for the first time on appeal, and this contention was never presented to the trial court for consideration. The scope of appellate review is limited to “only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.” Rule 1-3, Uniform Rules — Courts of Appeal. Constitutionality must be specifically pleaded in the trial court, initially, and cannot be asserted for the first time on appeal. Bays v. Estate of Zeringue, 584 So.2d 715, 723, (La.App. 5th Cir.1991), writ denied 590 So.2d 79 and 590 So.2d 516, citing Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984). Also Marler v. Petty, 94-1851 (La.4/10/95), 653 So.2d 1167, 1172; First Communication Co. v. Jefferson Parish, 97-608 (La.App. 5th Cir. 11/25/97), 703 So.2d 788, 789. | ^Defendant was amply represented by counsel at the trial court level, and we discern no injustice to Kramer by our refusal to consider it for the first time here on appeal.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.

. We note that mental illness may in some cases constitute just cause. See State In The Interest of ML, supra. Such is not held forth as a defense in the present case.