PICKETT, Judge.
We are presented an unfortunate case involving three children who have been bounced around, a family divided, parents incarcerated, and a history of drugs. It is a case where both the natural mother and father lost all parental rights to their three children by petition of the State for the “Termination of Parental Rights and Certification of the Minor Children for Adoption.” The mother now appeals. For the following reasons, we reverse and remand.
*623 BACKGROUND
On April 8, 1997, the three minor children came before the court to determine if they should be decreed children in need of care and/or supervision of the Department of Social Services, State of Louisiana. The State was acting on reports and investigations that evidenced the minor children were being abused by their maternal grandmother and uncle. Additionally at one point in time, the mother, Ms. Car-than, had left the children, without any notification of her whereabouts, for over two weeks with her mother, Ms. Baggett, who suffers from Alzheimer’s. At an adjudication hearing held on June 24,1997, Ms. Carthan, stipulated that “the children are in need of care without admitting the allegations of the petition.”
Following the initial adjudication there were several review hearings which were held on the following dates: October 30, 1997, August 27, 1998, September 18, 1998, March 23, 1999, and on July 23, 1999, at which time an answer hearing was set for the petition filed on behalf of the State requesting termination of parental rights. On September 14, 1999, the court granted the State’s petition to terminate parental rights.
During the span of these hearings, Ms. Carthan, who was previously 12incarcerated on a worthless check charge, was again incarcerated from September 5, 1997 until November 29, 1998, for violating the conditions of her probation; she had not performed her community service, failed to submit to substance abuse evaluation, and was in arrears in court fee and supervision payments. The father, Mr. Ricky Car-than, was incarcerated numerous times and is currently incarcerated serving a life sentence which he appealed and which has been affirmed. State v. Carthan, 99-512 (La.App. 3 Cir. 12/8/99); 765 So.2d 357. Mr. Carthan has not appealed the termination of parental rights.
ASSIGNMENTS OF ERROR
(1)The State failed to meet the burden of clear and convincing evidence as required in a request for parental termination and certification of children for divorce as per La.Ch.Code art. 1035(A).
(2) The Court failed to substantiate the allegations listed to support the termination in the petition contained in paragraphs 5 and 6.
(3) The Court was manifestly erroneous in granting the termination due to the failure to comply and support the burden of proof required by statute and the failure to prove the allegations contained in the petition.
OPINION
This appeal only concerns Ms. Car-than’s parental rights. Termination of parental rights is a severe and permanent action which must be scrutinized very carefully. State ex rel. T.M.H., 99-433 (La.App. 5 Cir. 11/30/99); 748 So.2d 1216.
The termination of parental rights requires proof by clear and convincing evidence. La.Ch.Code art. 1035. The State need only sustain that burden under one applicable subsection or paragraph of La.Ch.C. art. 1015, the statute that governs the ^termination of parental rights. State in the Interest of ML, 95-0045 (La.9/5/95); 660 So.2d 830. Appellate review of the trial court’s factual findings in termination of parental rights action are subject to a manifest error-clearly wrong standard. State in the Interest of KLB v. Biggs, 29,512 (La.App. 2 Cir. 2/28/97); 690 So.2d 965.
Ms. Carthan argues that the State failed to meet the clear and convincing burden of proof required to terminate parental rights. The State argues that it presented sufficient evidence to support termination of parental rights pursuant to La.Ch.Code art. 1015(5), which provides:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody *624 pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a stable, and permanent home.
The State presented evidence that Ms. Carthan failed to make scheduled visitations, failed to communicate consistently with the children, failed to keep the Department of Social Services informed of her address and any significant changes affecting her ability to comply with the case plan, failed to comply with treatment and rehabilitation services, failed to provide a safe home, and lack of reformation. The State argues it is clear from the evidence that Ms. Carthan cannot provide a stable home environment, and it is unreasonable to think she will be able to provide this home life based on her actions to date. The State further claims that she demonstrated no awareness of her parenting deficiencies and as a result appeared unmoved to make the sacrifices necessary to work toward changing in order to provide a safe, stable home for her children.
|4The trial court in its reasons for judgment stated (emphasis added):
I have, in the cases that have come before the Court for termination, bent over backwards to not terminate parental rights. But in this case I do believe that the Department, the OCS, has made every reasonable effort, particularly in Ms. Carthan’s case, to draw out from her her willingness to rehabilitate herself to the extent that she would be able to be a parent for these children. But I don’t really see any evidence of her continued concern, except for a few visits; and on some times she didn’t make her visits. And she didn’t attend the conference pertaining to a plan that was being considered. She hasn’t demonstrated any real maternal skills. And the past is usually a prologue to the future, and I believe that’s the case here. There’s been little showing on her behalf of parental responsibility. And I cannot see any reason for optimism that she’s going to do any better in the future ... And with the children, I just do not believe that there is sufficient optimism that this mother and this father could reform their ways sufficient to be responsible parents.
The trial court’s judgment states in relevant part:
Therefore, after due consideration of the stipulations, evidence, pleadings, previous judgments of this Court and the prior record, the State having met its burden under the Louisiana Children’s Code, the best interest of the children requiring relief, and the law and the evidence being in favor thereof for the reasons orally assigned....
Whether the State presented clear and convincing evidence to support termination of parental rights pursuant to La.Ch.Code art. 1015(5), is not dispositive. A trial judge’s determination that an element of a statutory subsection for the termination of parental rights has been proven, does not inherently satisfy the additional requirement that termination be in the best interest of the child. State in Interest of D.G. v. Danny G., 30,196 (La.App. 2 Cir. 10/29/97); 702 So.2d 43. The State must prove the best interest of the child dictates termination of parental rights. State in Interest of H.D., 98-0953 (La.App. 4 Cir. 11/4/98); 721 So.2d 1045.
The trial court did not articulate any findings that address the issue of whether termination of parental rights is in the best interest of the children. We find the termination of parental rights premature as the State has failed to prove the best ^interest of the child dictates termination of parental rights, which precludes the necessity of any discussion to deter *625 mine whether the State met the clear and convincing burden as to the specific allegations set forth alleging grounds for termination pursuant to La.Ch.Code art. 1015(5).
In this case, there are no potential adoptive parents. At one time, the State solicited names of potential placement prospects for the children. The children’s own paternal grandmother refused to take them because she had too many foster children. The foster parents have expressed no desire to adopt or have the children remain in permanent placement. There are three children ages 11, 9, and 6, and there is little likelihood of preserving any type of family unit through adoption. We find insufficient evidence to establish termination of parental rights is in the best interest of these children.
Ms. Carthan’s sister, Ms. Carolyn Jackson, was listed as a potential placement. Ms. Jackson expressed a willingness to assist. However, the State refused placement because Ms. Jackson lives right behind Ms. Baggett. Ms. Carthan has lived with her mother, Ms. Baggett, off and on. The State then made the conclusory supposition that due to Ms. Jackson’s work schedule, Ms. Baggett would be the caretaker of the children which was unsatisfactory as Ms. Baggett has Alzheimer’s and was accused of child abuse. This conclusion is not supported by any evidence in this record.
The case worker was asked: “Would it at least be a possibility to try that on some kind of trial placement basis, make it a requirement that Ms. Carthan live at her mother’s and the kids be placed with this sister who lives in the yard?” The case worker had difficulty in responding, and stated: “Well, we have seen — I mean, even being able to be in contact with Ms. Car-than has been very difficult; and she has just Ifinot complied with her case plan.” The trial court did not comment on the non-availability of adoptive parents or on the reasonableness of placing the children with their aunt and preserving some family integrity, if even on a trial basis.
In fact, the evidence establishes although there was no strict compliance with the case plan, Ms. Carthan did comply with some aspects of it. Further, we find evidence the State could have provided resources available to assist Ms. Carthan in working toward reunification with her children and failed to do so.
Understandably, the children are suffering from the behavior of their parents. Yet, it is compelling that the oldest child, who has become “parentified”, pseu-domature, and repeatedly denied any emotional difficulties, only wept in therapy when she resigned that she would not return “home.” Ties between biological parents and their children are recognized as the closest and strongest within the human family. A parent has a natural right to his biological child and that child likewise has a right to his parent. In the Interest of CLS, 94-531 (La.App. 3 Cir. 11/2/94); 649 So.2d 532 (citing In re Adoption of B.G.S., 556 So.2d 545 (La.1990)).
We find that the State has failed to prove that termination of the mother’s parental rights is in the best interest of the children. There are possible relative placements that have not been thoroughly explored. The State has failed to show reunification is not possible, and that is supposed to be the ultimate goal, reunification of mother and children.
For the foregoing reasons, we reverse and remand.
REVERSED AND REMANDED.