SUMMERS, Justice.
By a bill of information filed in May of 1976 the District Attorney of Orleans Parish charged Gordon Novel with conspiracy to commit aggravated arson on March 2, 1976 on the structure located at 330 St. Charles Avenue in the city of New Orleans. La.Rev.Stat. 14:26, 51. In July of 1976, Novel posted a $40,000 appearance bond as principal, with Peerless Insurance Company as surety.
After a first trial resulting in a hung jury, on motion of defense counsel in open court on December 1, 1976 a second trial was set for January 18, 1977. On the day fixed for trial defendant Novel did not appear and the trial was continued on the unsworn written motion of the defense, alleging that Novel was in the intensive care unit of the Medical Arts Hospital in Dallas, Georgia, under the care of Doctor Worthy. Defense counsel alleged that the information had been telephoned to him at 12:30 that day.
The court issued an alias capias for the arrest of defendant, fixing bail at $80,000. The State then moved the court to forfeit the $40,000 bond and the motion was denied “at this time.” In effect the trial judge held the case open to permit Novel and Peerless to file the requisite affidavit of physical disability within a reasonable time.
Thereafter, on February 10,1977, defense counsel filed a letter in the record from Dr. Jerry L. Worthy of Dallas, Georgia, stating that Novel was admitted to the Medical Arts Hospital there at nine o’clock on the morning of January 17, 1977 with complaints, signs and symptoms of an acute myocardial infarction or an impending cardiac problem. Novel, he wrote, was discharged three days later on January 20, 1977 with a diagnosis of angina pectoris.
Apparently, because of this inadequate showing of physical disability, on February 11, 1977 the State re-urged its January 18, 1977 motion to forfeit the $40,000 bond.
A deputy sheriff then testified that on January 18, 1977, while assigned to the court, he called out for Gordon Novel three times in the courtroom and three times in the hallway, with no response. Thereafter the State introduced in evidence a notice served on Gordon Novel on December 6, 1976 that he would be tried on January 18, 1977. The return noted that the house, which was the address on the bond furnished by Novel, was being repaired, but Novel was still getting mail at that address. The notice was left in the door. Although not referred to at the time, the record also contains a notice served on Peerless of Novel’s trial date. The State also introduced the bond into evidence and again moved that it be forfeited.
*952 In ruling on the motion the trial judge stated that on January 18 when the matter was called for trial and Novel was not present, the State moved to forfeit the bond. The motion was denied on January 18, according to the trial judge, because the court had good reason to believe that the defendant was hospitalized. An alias capias was issued for Novel’s arrest at that time because he had moved without notifying the court and because he was out of state.
Since that time, the trial judge declared, he had discovered that Novel was no longer in the city of New Orleans and his wife and family had moved out of the city. The trial judge said that the sheriff of Paulding County, Georgia, advised that an attempt was made to execute the alias capias on January 20, 1977 but that Novel had checked out of the hospital minutes before he arrived. Under these circumstances, the trial judge considered Novel to be a fugitive from justice and therefore ordered the bond forfeited. A formal judgment of bond forfeiture was signed and filed at that time. A new alias capias was issued for Novel’s arrest with bond of $250,000.
Notice of the forfeiture was mailed on February 16, 1977 to the surety on the bond at 116 John St., New York City. A copy of the notice was also mailed to the agent of the surety who posted the bond at the New Orleans address appearing on the face of the bond. An affidavit of the Clerk of Court was filed in the record on February 17, 1977 affirming that the notice of bond forfeiture had been sent by certified mail to the surety and its agent on February 16, 1977. No timely effort was made by Peerless to obtain review of this judgment.
July 13, 1977 was the next time counsel for Peerless appeared in open court. A motion was then filed to suspend the time period during which the bond forfeiture could be set aside. Therein it was alleged that Novel had voluntarily surrendered himself to the State of Georgia on February 22, 1977 in response to the arrest warrant issued by the Louisiana court. Novel was released on bond in Georgia, according to these allegations, and his extradition was on appeal to the Georgia Supreme Court. For these reasons, the motion continued, Novel could not be forcibly returned to Louisiana without violating the laws of Georgia, and the time to rescind the bond forfeiture in the instant case should be extended until five and one-half months after final disposition of the Georgia case.
A motion to rescind the bond forfeiture was also filed on the same day. According to that motion, it was error to hold a hearing on February 11, 1977 and order the bond forfeited without giving Novel an opportunity to present himself for trial. It was also alleged that the oral and documentary evidence adduced at that hearing was insufficient.
These motions were denied without a hearing for the stated reason that the defendant Novel was a fugitive from the State and not present in court. Counsel for Peerless objected to the ruling and applied to this Court for certiorari.
In its application to this Court Peerless alleged that its motion to rescind filed on July 13, 1977, five months and two days after the bond forfeiture, was timely (within the six months from forfeiture allowed by statute to apply to have the forfeiture set aside or rescinded).
Peerless’ application also complained of the trial judge’s refusal to hold an eviden-tiary hearing on its motions for an extension of time and to rescind the bond forfeiture. Because of this, the application asserts, Peerless was prevented from adducing proof of Novel’s hospitalization on January 18 or the fact that he was in custody in Georgia, which would have established the “non-forfeiture situations” referred to in Section 87 of Title 15 of the Revised Statutes. A motion to forfeit alone, Peerless asserted, was not sufficient; Sections 85 and 87 of Title 15 of the Revised Statutes permitted “adequate proof [to be] furnished within six months of forfeiture” in order to rescind the forfeiture. After considering the application, this Court ordered an evidentiary hearing contradictorily with the district attorney on the motions to extend time and to rescind the bond forfei *953 ture. A hearing in the trial court was accordingly set for August 8, 1977 on Peerless’ motion and thereafter continued to August 12.
Although Novel was not in attendance, the hearing was held as scheduled on August 12. At that time, over the State’s objection, Peerless offered to introduce a number of documents. Then over objection by Peerless the State offered to introduce its documentary evidence. All objections were overruled and the documents were admitted. Peerless’ offerings consisted of an affidavit by Dr. Jerry L. Worthy, dated July 26,1977, stating that Novel was admitted to the Medical Arts Hospital [in Dallas, Georgia] on January 17, 1977 complaining of chest pains and was treated as an inpatient until January 20, 1977 at which time he was discharged with the diagnosis of angina pectoris; an affidavit of the custodian of records at Medical Arts Hospital with copies of the hospital records attesting to Novel’s admittance and discharge as stated by Dr. Worthy; a nurse’s affidavit verifying Novel’s presence at the hospital as stated in Dr. Worthy’s affidavit; a news release relating to a citation conferred upon Dr. Worthy for heroic conduct at the site of an airline disaster in Georgia; an August 3, 1977 letter from Novel’s bail bondsman surrendering Novel to the Sheriff of Orleans Parish “via his surrender to and present custody by, Bill Hutson, Sheriff of Cobb County, on February 22,1977 under a Louisiana fugitive warrant,” Novel then being in custody under bond awaiting extradition to the State of Louisiana; and a copy of a mailgram dated August 4, 1977, addressed to the Sheriff of Cobb County, Georgia, confirming the surrender of Novel by his bail bondsman to the Sheriff of Cobb County. A copy of an order of court from Cobb County, Georgia, was not admitted when the State objected.
Among the State’s exhibits which were apparently ordered filed is a letter from the Sheriff of Paulding County, Georgia, to the Sheriff of Orleans Parish dated February 24, 1977. The author of the letter expressed the opinion that a security leak had occurred in connection with the apprehension of Novel under the alias capias issued on January 18, 1977. The opinion was based upon the circumstance that Novel left the hospital “a short time” before the sheriff arrived to apprehend him on the fugitive warrant.
On this record the trial judge denied the motions. Thereafter, on the State’s motion a writ of fieri facias was issued against Peerless and Novel, with accompanying interrogatories dated August 15,1977, to garnishee funds belonging to Peerless in the hands of the State Treasurer.
Peerless then moved to reopen the hearing of August 12 for the purpose of receiving evidence relating to the service of process upon Peerless, the service of notice of forfeiture upon Peerless and the authority of the agent who issued the Novel bond to act for Peerless. A hearing held on this motion on August 22 resulted in a denial, the court refusing to reopen the hearing of August 12 to receive additional evidence in support of Peerless’ contention that the bond forfeiture of February 11 should be set aside. There was no error in the denial of the August 22 motion to reopen the hearing of August 12. The August 12 hearing gave Peerless every opportunity to present evidence in support of its position. The technical inadequacy of service complained of was therefore cured, if they were indeed well-founded in a technical sense.
From this ruling Peerless applied to this Court for review. In granting a writ the Court requested argument “as to whether a judgment decreeing a bond forfeiture may be set aside if adequate proof is furnished within six months of the forfeiture that the principal was prevented from attending by physical disability.”
Addressing this issue in a per curiam the trial judge set forth that Section 87(A) of Title 15 of the Revised Statutes provides that a judgment of forfeiture shall not be rendered if it is shown “to the satisfaction of the court by the sworn statement of a reputable physician that the principal in such bond is prevented from attending by some physical disability.” Relying upon *954 this provision the trial judge expressed the opinion that as a general proposition a judgment of forfeiture, once rendered, could not be set aside for physical disability unless the defendant is surrendered and tried or the case is continued. In his opinion the only other instance in which a forfeiture could be set aside was when the principal was detained in another jail or in the armed services. Thus, he concluded, in the case of physical disability the forfeiture could only be prevented by a showing to the satisfaction of the trial judge by the sworn .statement of a reputable physician furnished at the time the principal failed to appear that he was prevented from attending by some physical disability. In the absence of such a showing, once the forfeiture took place, no time was allowed by statute to set the forfeiture aside.
In the case where the principal is prevented from attending because he is detained in a jail or penitentiary in another jurisdiction or is serving in the armed forces of the United States, however, the trial judge was of the opinion that the legislature had seen fit to allow six months to prove the principal’s detention and have the forfeiture set aside.
In the instant case, the trial judge found that the affidavit of physical disability was not presented until August 8, 1977, five months and twenty days after the day when Novel was to appear on January 18, 1977. Notwithstanding the tardy presentation of the affidavits of physical disability and the other evidence received at the August 12 hearing, the trial judge was not “satisfied” from the sworn statement of the physician that the principal was prevented from attending court on January 18. “The whole history of this case,” the per curiam set forth, “including the defendant’s testimony at the earlier trial which ended in a hung jury has indicated to the trial court that the defendant was contemptuous of the authority of the court.”
Initially it should be noted that on January 18, 1977 the trial judge did not order forfeiture of the bond “at this time”, but held the case open in order to afford Peerless the opportunity to produce proof of its unsupported claim that Novel was physically disabled. When an unsworn letter was furnished on February 10 the State reurged its motion for forfeiture and it was formalized and granted on February 11. In its pleading Peerless relies on this February 11 date in computing the time within which it considers the law permitted the affidavit of physical disability to be furnished.
Nevertheless, under the State’s theory, this February 11 date is unimportant because the State contends that no time is allowed subsequent to the day when the defendant was required to appear for trial. Nor is this position altered because the trial judge held the case open to enable Peerless to file the requisite affidavit. This position contemplates that the State’s January 18 motion to forfeit was held in abeyance and formalized on February 11.
Because there is no evidence that Novel was in prison or in the armed forces on January 18, 1977 a showing that he was detained on that account at a later date would have no bearing on the State’s right to claim a forfeiture because of the nonappearance on January 18. For these reasons, this Court’s interpretation of Section 87 must determine whether proof of physical disability must be furnished on or before the day on which the defendant is ordered to appear, or whether a showing may be made within six months after bond forfeiture that the principal in the bond was prevented from attending by some physical disability. Since neither Novel nor Peerless made such a showing on January 18, 1977 when Novel’s appearance was required, the question is crucial to their right to set aside the forfeiture.
Section 87 provides:
“A. No judgment decreeing the forfeiture of the appearance bond shall be rendered if it is shown to the satisfaction of the court by the sworn statement of a reputable physician that the principal in such bond is prevented from attending by some physical disability.
“B. No judgment decreeing the forfeiture of the appearance bond shall be *955 rendered if it is shown to the satisfaction of the court that the principal in such bond is prevented from attending because he is being detained in a jail or in a penitentiary in another jurisdiction or is serving in the armed forces of the United States. A sworn affidavit of the jailer, warden or other responsible officer of the jail or penitentiary in which the principal is being detained, or the commanding officer of the principal who is in the armed forces, shall be considered adequate proof of the principal’s detention. If adequate proof is furnished within six months of forfeiture that the principal failed to appear on date of forfeiture for the reasons herein set forth, the forfeiture shall be set aside. Acts 1966, No. 311, § 2, eff. Jan. 1, 1967.”
The State takes the position that because the sentence, “If adequate proof is furnished within six months of forfeiture that the principal failed to appear on date of forfeiture for the reasons herein set forth, the forfeiture shall be set aside.”, is to be found in subsection B, the language grants six months to furnish adequate proof only in situations referred to in subsection B, and subsection B only involves detention in prison and the armed forces. This view of subsection B is further confirmed, it is argued, because the clause, “the reasons herein set forth”, refers to the reasons for forfeiture set forth in subsection B, those being, detention in prison or the armed forces. On the other hand, citing the history of Section 87, Peerless argues that the six months allowed by subsection 87B applies to the entire section, allowing six months to furnish the proof of physical disability referred to in subsection 87A.
In this Court’s view “the reasons herein set forth” is a limiting clause in subsection B which properly confines the furnishing of adequate proof to the reasons assigned in subsection B — detention in jail or the armed forces. Support for this interpretation is to be found in that part of subsection B which refers to “[a] sworn affidavit of the jailer, warden or other responsible officer of the jail or penitentiary in which the principal is being detained, or the commanding officer of the principal who is in the armed forces, shall be considered adequate proof of the principal’s detention.” This quoted language is immediately followed by reference to that adequate proof in these words: “If adequate proof is furnished within six months . ..” The adequate proof allowed within six months, then, is obviously the adequate proof mentioned in the immediately preceding sentence — that is, proof of detention in prison or the armed forces. Subsection 87A makes no reference to adequate proof or a six-month period after forfeiture to furnish that proof. That subsection contemplates that the forfeiture shall not be decreed “if it is shown to the satisfaction of the court by the sworn statement of a reputable physician that the principal in such bond is prevented from attending by some physical disability.” The tense of the language employed denotes the present, not a future showing. Unless a provision for furnishing proof in the future is contained in subsection A as it is in subsection B such a meaning should not be read into subsection A.
It should be noted that physical disability was first recognized as a cause for preventing a bond forfeiture by Act 17 of 1900. Surrender of the prisoner within specified times was also a cause for setting aside a bond forfeiture. See Article 108 of 1928 Code of Criminal Procedure (surrender in 5 days); Act 287 of 1950 (surrender in 30 days); Act 260 of 1956 (surrender in 60 days). The surrender provisions, however, in no way affected the physical disability provision. They were separate enactments.
It was not until 1958 that the legislature added imprisonment as a ground for preventing forfeiture. Significantly, however, this ground for preventing forfeiture was added as an amendment to Article 109 of the 1928 Code of Criminal Procedure as subsection B, subsection A being the physical disability provision. Neither subsection then contained a provision permitting time to produce proof after the forfeiture in order to set it aside.
*956 By Act 411 of 1962 a third ground for preventing forfeiture was enacted, detention because of service in the armed forces. This ground was incorporated into the subsection of the Act relating to detention on account of imprisonment. For the first time the law permitted time after forfeiture to furnish proof of the detention, placing that provision within the subsection relating to detention on account of imprisonment or service in the armed forces. The first subsection of the act reenacted the physical disability ground as a defense to forfeiture. Its integrity as a separate ground was retained by its inclusion in a separate subsection of the Act.
Act 220 of 1964 is the present version of Section 87.
This history is noteworthy. The deliberate separation of the grounds in subsections A and B was apparently a recognition by the legislature that they required separate treatment. Throughout their history subsections A and B have been maintained as separate and distinct provisions.
Except for the language of the statute itself and the inference to be gained from the sections’ history a search for the legislative intention has proven unavailing. It is necessary, therefore, to apply the statute according to its letter, which cannot, under recognized principles of statutory construction, be disregarded under the pretext of pursuing its spirit. La. Civil Code art. 13.
The usual and ordinary signification attributed to separate subsections where there is no general principle enacted in the section to which they are subservient is to accord to each subsection a separate and independent status as though they were independent enactments. To do otherwise would be to impose upon one subsection the meaning contained in the other without a reason to do so. The result would be to change the meaning of the enactment thus affected.
While the following observation may not be relevant to the question of statutory interpretation, it is important to a disposition of this case on its merits because it involves an element of the statute which is undisputed; the unambiguous language of subsection A requiring that the showing of physical disability be “to the satisfaction of the court.” The trial judge stated emphatically that he was not “satisfied” that the sworn statement of the physician established Novel’s physical disability. Such a conclusion was undoubtedly the result of his familiarity with the entire case and his observation of Novel’s contemptuous attitude at the aborted trial. This, together with the circumstance that Novel left the hospital within minutes before the sheriff appeared to apprehend him, supports the judge’s credibility ruling. Therefore, it was not shown “to the satisfaction of the court” as subsection A of Section 87 requires, by the sworn statement of the physician, that the principal in the bond was prevented from attending by some physical disability. Consequently, it does not matter whether the affidavit was presented at the time when Novel’s appearance was required or within six months thereafter if it was not “to the satisfaction of the court.”
On the record, therefore, Peerless has not made a timely showing to the satisfaction of the court that the bond should not be forfeited.
For the reasons assigned, the judgment of the trial court ordering the bond forfeiture is affirmed.