649 So.2d 532 (1994)
In the Interest of CLS.
Waylon and Lawanda STANLEY, Plaintiffs-Appellants,
v.
Gregory and Kimberly STROTHER, Defendants-Appellees.
No. 94-531.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
*534 Harold Alan Murry, Patricia Elaine Evans, Alexandria, for Patricia Evans et al.
Ralph W. Kennedy, Alexandria, for Gregory Strother et vir.
Before GUIDRY, C.J., and KNOLL and WOODARD, JJ.
KNOLL, Judge.
The natural parents of a minor child appeal the judgment of the Pineville City Court, acting in its capacity as a juvenile court, terminating their parental rights and awarding permanent custody of their daughter to the appellees, Gregory and Kimberly Strother. The issues presented on appeal are (1) whether the juvenile court erred as a matter of law in terminating the natural parents' parental rights, and (2) whether the juvenile court correctly awarded custody of the young child to the appellees. We reverse in part, affirm in part, and remand.

FACTS
The record shows the following facts. On September 24, 1991, the Louisiana Department of Social Services received an anonymous report of child abuse involving CLS, a child approximately 2½ months old, born on July 30, 1991. The abuse concerned U-shaped bruises located on her wrists. Social Services Specialist Ginger Mallette investigated the allegation. During the investigation, the child's natural parents, Waylon and LaWanda Stanley, admitted that the bruises may have been inflicted when they lifted CLS up to play with her. Ginger Mallette also noted that the parents' home was "filthy with dirty dishes, clothes and food [were] scattered everywhere."
Prompted by Waylon Stanley's hapless childhood experiences with foster care placement and LaWanda Stanley's previous contact with the Louisiana Department of Social Services,[1] the natural parents and Ginger Mallette discussed the possibility of avoiding formal child in need of care proceedings and foster care placement of CLS. As an alternative, the natural parents requested that CLS be placed in custody of a relative. The Louisiana Department of Social Services approved.
On October 1, 1991, Waylon and LaWanda Stanley voluntarily transferred custody of CLS to Lovie Sue Stanley, Waylon Stanley's aunt, via a notarized affidavit. Judgment authorizing the transfer was signed the same day. Other than approving transfer of custody to Lovie Sue Stanley and generally monitoring CLS's whereabouts, the Louisiana Department of Social Services did not offer the natural parents any counseling or plan to improve their parenting skills.
While CLS stayed with her great aunt, Lovie Sue Stanley, the natural parents frequently visited her. Lovie Sue Stanley testified that Waylon and LaWanda visited CLS "five or six times a day." However, soon growing weary of this habitual visitation, Lovie Sue Stanley obtained a restraining order prohibiting Waylon and LaWanda Stanley from further visitation with their daughter. The record does not disclose the conditions or length of the restraining order.
After having custody of CLS for approximately six months, Lovie Sue Stanley's marital relationship deteriorated, forcing her to return CLS to the natural parents. After only two weeks, Ginger Mallette removed CLS from her natural parents and placed her with Bruce and Georgia Stanley, CLS's paternal grandparents. Complaining that they were unable to care for the child, the grandparents threatened to place CLS in foster care. Shortly thereafter, on April 3, 1992, Waylon and LaWanda learned about a childless couple, Gregory and Kimberly Strother, who desired to care for a child. The Strothers testified that they were looking for a child to adopt.
Waylon and LaWanda testified that they arranged a meeting with the Strothers because they were afraid that CLS would be *535 placed in foster care. The Department of Social Services had already removed CLS from them, none of their relatives were able to help, and they were experiencing marital and financial discord. LaWanda Stanley testified that they initiated contact with the Strothers so that CLS "wouldn't have want for anything." Waylon Stanley testified that they were in a "financial bind" and "couldn't do nothing for the baby." Waylon Stanley also said that he believed that the Strothers could give his daughter "something that I couldn't give her."
The natural parents, accompanied by Lovie Sue Stanley and other relatives, had two meetings with the Strothers. At the meetings, Waylon and LaWanda Stanley discussed their situation with the Strothers, and the Strothers agreed to take care of CLS. The Strothers also agreed that the Stanleys would not have to provide anything for CLS while CLS was in their care. The subject of adoption was discussed but never resolved. At trial, LaWanda Stanley testified that the custody transfer to the Strothers was intended to be strictly temporary and only until she "got everything back in order." However, the Strothers testified that the Stanleys knew that the Strothers would not have agreed to take care of CLS unless they could adopt her.
As discussed and planned at the two meetings by the parties, a petition for transfer of guardianship was signed by Lovie Sue Stanley on April 9, 1992, transferring guardianship of CLS to the Strothers. Judgment allowing transfer of guardianship and custody of CLS to the Strothers was granted on April 10, 1992. At the time of transfer, the Strothers promised the natural parents that they could visit CLS at any time and would provide pictures and information about her.
On April 27, 1992, shortly after the child was placed with the Strothers, the Strothers filed ex parte adoption papers in Allen Parish seeking CLS's adoption. Waylon and LaWanda Stanley were not served and they did not participate in this proceeding or provide any written consent for the adoption.
After CLS's transfer to the Strothers, Waylon and LaWanda Stanley testified that they visited CLS infrequently so that she would adjust to the Strothers. Testimony from both sides indicates that Waylon and LaWanda saw CLS at least four times: in April of 1992, on July 30, 1992 (CLS's birthday), in September of 1992, and in December of 1992 (Christmas). Waylon and LaWanda Stanley testified that they attempted to see their daughter on other occasions, but were prevented from doing so because the Strothers were often away from home and at times intentionally avoided them.
In December of 1992, the Stanleys' relationship with the Strothers soured when the Stanleys brought CLS a Christmas gift. During the Christmas visit, in the presence of the natural parents, Kimberly Strother often referred to herself as CLS's mother. Upon hearing Kimberly Strother refer to herself as CLS's mother, LaWanda Stanley testified that she suffered an emotional outburst which shortened the visit to fifteen minutes.
After their Christmas visit, on February 25, 1993, Waylon and LaWanda Stanley hired an attorney to regain custody of their daughter. The Stanleys testified that their attorney advised them to have no further contact with their daughter until the matter was resolved by the courts. The attorney filed a petition for custody on March 2, 1993, and the hearing was set for April 1, 1993. However, on April 12, 1993, the Stanleys' attorney withdrew from the case without explanation. The custody hearing was then rescheduled to June 24, 1993, and rescheduled again to July 22, 1993. On July 20, 1993, Legal Services enrolled as counsel. The hearing was reset for July 29, 1993. Responding to Waylon and LaWanda Stanley's petition for custody, the Strothers filed a petition for termination of parental rights and custody which was authorized by court order on March 30, 1993.[2]
The custody hearing began on July 29, 1993, and concluded on October 5, 1993, after being continued four times. Judgment in this matter was further delayed until Dr. Daniel Lonowski, a child psychologist, furnished *536 his report on November 12, 1993. Thereafter, trial memorandums were filed in January of 1994. The juvenile court issued reasons for judgment on February 24, 1994, and signed a final judgment on March 3, 1994.
The juvenile court terminated Waylon and LaWanda Stanley's parental rights, finding that Waylon and LaWanda had abandoned CLS. In its reasons for judgment, the juvenile court cited no case law and referred generally to Louisiana Children's Code Article 1015 without reference to any of its particular provisions. The juvenile court also awarded permanent custody of CLS to the Strothers, finding that it was in her best interest. The Stanleys bring this appeal.

TERMINATION OF PARENTAL RIGHTS
Ties between biological parents and their children are recognized as the closest and strongest within the human family. A parent has a natural right to his biological child and that child likewise has a right to his parent. In re Adoption of B.G.S., 556 So.2d 545 (La.1990). As Justice Tate so eloquently stated in his concurring opinion to State v. Peniston, 235 La. 579, 105 So.2d 228 (1958):
The right of a parent to his child existed before governments or other social institutions of mankind. This natural right proceeds from our Creator and exists independently of the state; the state ... does not in my humble opinion possess the power to take away in favor of a stranger the God-given right of a parent to his child, in the absence of the parent's forfeiture or abandonment of such right or of positive detriment to the child.
Id. 105 So.2d at 232 (citations omitted).
Louisiana courts have historically been reluctant to sever the parent-child relationship and derogate from the natural rights inherent therein, since the jurisprudence recognizes the fundamental belief that a child has a right to know and love his parents, and such rights should not be denied except when the parent has proven himself unworthy of this love. In re Elliott, 630 So.2d 281 (La. App. 3d Cir.1993).

Burden of Proof
Because natural parents have a fundamental liberty interest in the care, custody, and control of their children, termination of parental rights must be proven by at least clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); La.Ch.C. Art. 1035. Thus, the termination of parental rights is a severe action which requires an onerous burden of proof. State in the Interest of JML, 540 So.2d 1244 (La.App. 3d Cir.1989).
Proof by clear and convincing evidence requires a party to persuade the trier of fact that the fact or causation sought to be proved is highly probable, i.e. much more probable than its non-existence. Chatelain v. State Through DOTD, 586 So.2d 1373 (La. 1991) (citing McCormick on Evidence, Sec. 340(B) (3d ed. 1984)). This burden is an intermediate one between the burden of proof by a preponderance of the evidence and the burden of proof beyond a reasonable doubt. Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La.1976). Proof by clear and convincing evidence requires more than a "preponderance" of the evidence, the traditional measure of persuasion, but less than "beyond a reasonable doubt," the stringent criminal standard. Succession of Bartie, 472 So.2d 578 (La.1985); Succession of Lyons, 452 So.2d 1161 (La.1984). Proof by a preponderance requires that the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976). Thus, in the case sub judice, the Strothers bear the burden of proving by at least clear and convincing evidence that the Stanleys' parental rights should be terminated.

Grounds For Termination of Parental Rights
Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. The Louisiana Children's Code authorizes the district attorney, the district attorney's designee, the Louisiana Department of Social Services, and the court upon its own motion to institute a petition for *537 the termination of parental rights. La.Ch.C. Art. 1004. The official comments to La. Ch.C. Art. 1004 indicate that the court or district attorney may authorize a private litigant to bring an action for termination of parental rights. La.Ch.C. Art. 1004, cmt. d and 1992 Rev. cmt. In this case, the juvenile court authorized Gregory and Kimberly Strother, as private litigants, to bring a petition for termination of Waylon and LaWanda Stanley's parental rights for abandonment of CLS.
Before a court can terminate a natural parent's parental rights, at least one of the grounds set forth by the Louisiana Legislature in La.Ch.C. Art. 1015 must be proven. La.Ch.C. Art. 1015 contains ten grounds for the termination of parental rights:
(1) Prior criminal conviction;

* * * * * *
(2) Criminal conduct;

* * * * * *
(3) Other parental mistreatment;

* * * * * *
(4) Prior adjudications as a child in need of care;

* * * * * *
(5) Prior adjudication as a child in need of care and removal from the parental home;

* * * * * *
(6) Loss of custody due to parent's incarceration;

* * * * * *
(7) Loss of custody due to the parent's condition;

* * * * * *
(8) Desertion of the child;

* * * * * *
(9) Abandonment of the child; and,
* * * * * *
(10) Failure to maintain contact with the child.

* * * * * *
La.Ch.C. Art. 1015 (emphasis added).
As indicated by the express language and structure of the article, each ground was intended by the legislature to cover a separate and distinct situation calling for the termination of parental rights.
In the case sub judice, the juvenile court terminated Waylon and LaWanda Stanley's parental rights because it found that Waylon and LaWanda Stanley had abandoned CLS within the meaning of La.Ch.C. Art. 1015(9), which provides:
(9) Abandonment of the child
(a) The child has been abandoned by his parent for a period of at least four months.
(b) The parent has failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility.
Anticipating that they could not provide the care and support that their daughter needed, Waylon and LaWanda Stanley demonstrated an intention to assume parental responsibility and provide for CLS's needs when they arranged to place her in the Strothers' able and loving care, rather than in foster care. Thus, because the Stanleys placed CLS in the physical custody of the Strothers so that CLS could receive the care and support which they could not at the time give her, it cannot be clearly presumed that they manifested an intention to abandon CLS and avoid all parental responsibility. See Lewis v. Taylor, 554 So.2d 158 (La.App. 2d Cir.1989), writ denied, 554 So.2d 1237 (La. 1990); State in Interest of Foret, 398 So.2d 78 (La.App. 4th Cir.), writs denied, 401 So.2d 987, 1208 (La.1981); Brown v. Ellison, 162 So.2d 805 (La.App. 4th Cir.1964). Therefore, even though the Stanleys' behavior towards CLS has been nefarious and detrimental to her welfare, the record fails to sufficiently demonstrate the clear and convincing evidence required to terminate their fundamental parental rights upon a finding of abandonment.
*538 Considering that the Stanleys voluntarily placed CLS in the physical custody of some other individual or married couple, we also find that the juvenile court erred as a matter of law in its application of an abandonment analysis as contained in La.Ch.C. Art. 1015(9). Because the record does not impart facts indicating an abandonment, the juvenile court should have applied those grounds contained in La.Ch.C. Art. 1015(10):
(10) Failure to maintain contact with the child
(a) The child was voluntarily placed in the physical custody of some other individual or married couple.
(b) The parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years.

La.Ch.C. Art. 1015(10) (emphasis added).
It is an axiomatic rule of statutory construction that a specific expression of law should prevail over a more general expression of law.[3] Hence, when deciding which one of La.Ch.C. Art. 1015's ten grounds to apply, a court must choose that ground which most closely fits and specifically addresses the facts of the case before it. To hold otherwise would weaken the lines of distinction between each of La.Ch.C. Art. 1015's subsections and would change the meaning of the entire enactment. See State v. Novel, 356 So.2d 950 (La.1978). Moreover, as a statute which is in derogation of a common or natural right, La.Ch.C. Art. 1015 must be strictly construed. See Rodriguez v. Louisiana Medical Mut. Ins. Co., 618 So.2d 390 (La.1993); State in the Interest of JL, 93-352 (La.App. 3d Cir. 5/18/94); 636 So.2d 1186; State in Interest of P.R.B., 622 So.2d 716 (La.App. 5th Cir.1993).
Even applying La.Ch.C. Art. 1015(10), the record does not contain the clear and convincing evidence needed to terminate the Stanleys' parental rights for failure to maintain contact with CLS. While the record shows that the Stanleys have at times refused or failed to visit, communicate, or attempt to communicate with CLS without just cause, they have not done so for a period of two years. In conclusion, we are compelled to find that the juvenile court erred as a matter of law in terminating the Stanleys' parental rights on grounds of abandonment.

CUSTODY
We now address whether the juvenile court correctly awarded custody of CLS to Gregory and Kimberly Strother.
The Stanleys voluntarily transferred custody of their daughter to Lovie Sue Stanley and thereafter to Gregory and Kimberly Strother under such terms and conditions that would enable her to receive adequate care and treatment. Both of these transfers were approved by court judgment and expressly sanctioned by Chapter Three of the Louisiana Children's Code entitled Voluntary Transfer of Custody. La.Ch.C. Art. 1510 et seq. The Children's Code defines a voluntary transfer of custody as follows:
`Voluntary transfer of custody' is a parent's knowing and voluntary relinquishment of legal custody or guardianship to an agency, institution, or individual, subject to residual parental rights retained by the parent and under such terms and conditions that enable the child to receive adequate care and treatment.
La.Ch.C. Art. 1511(4).
After completing a voluntary transfer of custody, parents may only regain custody of their child if the other party to the transfer agrees to return the child, or upon successful motion to the court. La.Ch.C. Art. 1522. Before a court may authorize the return of a child to the natural parents after a voluntary transfer of custody, the court must find that it is in the best interests of the child. La.Ch.C. Art. 1523. When deciding *539 whether a child should be returned to his natural parents after a voluntary transfer of custody, the court must consider: (1) the length of the parent/child separation; (2) the current fitness of the parents; (3) the frequency of contact between the parents and child during the separation; (4) the efforts made by the parents to exercise parental responsibilities during the separation, including support; and, (5) the terms and conditions of the judgment. Id.
The trial judge is vested with great discretion when making a determination of child custody and his decision will only be reversed upon a clear showing of abuse of discretion. See Thompson v. Thompson, 532 So.2d 101 (La.1988). In a custody contest between parents and non-parents, the parents enjoy a paramount right to custody and may be deprived of that right only for compelling reasons. Wood v. Beard, 290 So.2d 675 (La.1974). When possible a child should remain in the natural parents' custody to maintain family unity and help the child identify as part of the natural family unit. State in the Interest of Sylvester, 525 So.2d 604 (La.App. 3d Cir.1988). Examination of the comparative wealth of the parties and the corresponding ability of a wealthier party to provide greater material advantages for a child should have no influence in determining child custody between parents and non-parents. See In re J.M.P., 528 So.2d 1002 (La.1988); Wood v. Beard, supra; State v. Brockner, 207 La. 465, 21 So.2d 499 (1945).
After an exhaustive review of the record, we fail to find any abuse of discretion with the juvenile court's custody determination. We find that the juvenile court was correct in concluding that it is in the best interests of CLS to presently remain in the custody and loving care of Gregory and Kimberly Strother.
In reaching our decision, we are especially mindful of Dr. Daniel Lonowski's opinion that CLS stands a 70% to 80% chance of being abused if she is returned at this time to the custody of her natural parents. As adeptly stated by the juvenile court:
"The testimony of Dr. Daniel Lonowski, Phd., is critical. The testimony substantiates the development and adjustment of [CLS] with the Strothers. This testimony also clearly reflects Dr. Lonowski's concerns regarding the conduct of the Stanleys. There is no question in the Court's opinion that the Strothers are capable, ready, willing and able to care for [CLS] in an appropriate manner. The serious question is the intent and motivation of the Stanleys. They have stated many reasons for their lack of concern and lack of opportunity to have contact with [CLS]. Upon review of Dr. Lonowski's deposition, one will find that Dr. Lonowski expressed his concern that the same behavior exhibited by the Stanleys, with regard to each of contact and lack of concern for [CLS's] welfare, will result again if they are given custody of [CLS]. The Court is aware of the past allegations of abuse and the involvement of the State of Louisiana as described by Ms. Ginger Mallette. The Court is aware that the oldest child of LaWanda Stanley is currently in the care, custody, and control of LaWanda's mother and father. There does not appear to have been any attempt to regain possession or custody of this young person."
Thus, until the Stanleys can earnestly provide a caring, loving, stable, and safe environment for their daughter, it is in the best interests of CLS to remain with Gregory and Kimberly Strother.
At the conclusion of an unsuccessful termination of parental rights hearing, the Louisiana Children's Code expressly authorizes the juvenile court to make the following dispositions:
Art. 1039. Other dispositions
* * * * * *
(1) Dismiss the petition.
(2) Reinstate the parent to full care and custody of the child.
(3) If the child has been previously adjudicated as a child in need of care, reinstate that proceeding pursuant to Title VI.

*540 (4) Upon a showing of sufficient facts, adjudicate the child in need of care in accordance with Title VI.

(5) Upon a showing of sufficient facts, adjudicate the family in need of services in accordance with Title VII.
(6) Make any other disposition that is in the best interest of the child.
La.Ch.C. Art. 1039 (emphasis added).
The record contains ample and sufficient facts which would allow the juvenile court either to adjudicate CLS as a child in need of care or to adjudicate the family in need of services. Either one or both of these proceedings would safeguard the interests of CLS and begin the process of rehabilitation and counseling that Waylon and LaWanda Stanley certainly require. We believe that the Stanleys have expressed a sincere desire to regain custody of CLS, but parental responsibilities are not fulfilled by merely expressing concern or having good intentions. State in the Interest of D.L., 457 So.2d 141 (La.App. 2d Cir.1984). If the Stanleys desire to regain custody of their daughter, they must immediately devote themselves to the often long and arduous process of professional counseling, rehabilitation, maturity, and self-growth. The future custody of CLS will ultimately be decided by the Stanleys' own decisions and actions.
After careful consideration, we believe that this unfortunate custody tug-of-war between the Strothers and the Stanleys could have been avoided if formal child in need of care or family in need of services proceedings had been instituted from the very beginning. See In the Interest Of Street, 463 So.2d 1373, 1378 n. 5 (La.App. 1st Cir.1984), writ denied, 466 So.2d 1300 (La.1985). Accordingly, we remand this case to the juvenile court for further consideration of La.Ch.C. Art. 1039.

THE BEST INTEREST OF THE CHILD REQUIRES PROMPT AND FINAL DECISIONS
The Stanleys filed their petition for custody on March 2, 1993. The Strothers reconvened with a termination of parental rights on March 30, 1993. The custody hearing began on July 29, 1993, and concluded on October 5, 1993. Dr. Lonowski furnished his report on November 12, 1993. The juvenile court rendered judgment on March 24, 1994, more than one year from the time that the Stanleys filed their petition.
We note with concern the many times that this matter was continued in the juvenile court. We feel that these continuances were unduly long and frequent, and did not serve the best interest of CLS or any of the parties involved. Our jurisprudence has finally recognized that the best interest of a child requires prompt and final decisions. In re J.M.P., 528 So.2d at 1016-17. Although In re J.M.P. concerned an adoption matter, we believe that the underlying principle urging promptness in juvenile proceedings applies to all juvenile matters. Moreover, the Children's Code mandates that the juvenile court fix the hearing not less than 60 days nor more than 90 days after filing of the petition. La.Ch.C. Art. 1031. A hearing not conducted within the required delays defeats and frustrates the purpose for which the law set these delays. The delays are fixed by law in paramount concern for the best interest of the child and should not be thwarted. The juvenile court should not tolerate unduly and frequent continuances, and should move juvenile matters through the judicial process with promptness and preference.
Therefore, we will remand this matter to the juvenile court with instructions that future proceedings of this case be set and heard with promptness and preference.

Decree
For the forgoing reasons, we reverse and set aside that portion of the juvenile court's judgment terminating Waylon and LaWanda Stanley's parental rights based upon a finding of abandonment. We affirm that portion of the juvenile court's judgment maintaining custody of CLS with Gregory and Kimberly Strother until such time as the juvenile court determines that Waylon and LaWanda Stanley can provide a caring, loving, stable, and safe environment for their daughter. Furthermore, we remand this case to the juvenile court for a prompt and preferential fixing, hearing, and consideration of La.Ch.C. Art. 1039 as discussed above. Costs of this *541 appeal are assessed one-half to the Strothers and one-half to the Stanleys.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED FOR A PROMPT AND PREFERENTIAL FIXING AND HEARING.
NOTES
[1] Before CLS's birth, LaWanda Stanley voluntarily transferred custody of her first child by another man to her parents because of a child abuse incident involving Waylon Stanley.
[2] See La.Ch.C. Art. 1004, cmt. d and 1992 Rev. cmt.
[3] See Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980); State ex rel. Bickman v. Dees, 367 So.2d 283 (La.1978); Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977); State v. Maduell, 326 So.2d 820 (La.1976); Teachers' Retirement Sys. of La. v. Vial, 317 So.2d 179 (La.1975); Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971); Arata v. Louisiana Stadium and Exposition Dist., 254 La. 579, 225 So.2d 362 (1969); State v. Mejia, 250 La. 518, 197 So.2d 73 (1967); State v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958); State v. Rapides Parish Sch. Bd., 158 La. 251, 103 So. 757 (1925).