NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**16-741**

**STATE IN THE INTEREST OF R.J. AND M.J.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 14-JV-017701
HONORABLE CURTIS SIGUR, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED.**

**S. Marie Johnson**
**Public Defender's Office**
**St. Martin Parish**
**106 W. Berard Street**
**St. Martinville, LA 70582**
**(337) 394-1446**
**COUNSEL FOR APPELLANT:**
     **R.O.   (mother)**

**Barry L. LaCour**
**Mental Health Advocacy Service**
**302 Dulles Drive, Suite #U-47**
**Lafayette, LA 70506**
**(337) 262-2030**
**COUNSEL FOR APPELLEES:**
     **R.J. (child)**
     **M.J. (child)**

**Chantel Conrad**
**825 Kaliste Saloom Road**
**Brandywine III, Suite 150**
**Lafayette, LA 70508**
**(337) 262-2250**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana, Department of Children & Family Services**

**Joslyn  Sias**
**203 W. Main Street, Suite 105**
**New Iberia, LA 70560**
**(337) 394-1446**
**COUNSEL FOR APPELLEE:**
     **E.J. (father)**

**SAVOIE, Judge.**

The mother, R.O.,[1] appeals the termination of her parental rights as to her two minor children, R.J. and M.J. For the following reasons, we affirm the trial court's ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2014, the State of Louisiana, Department of Children and Family Services ("the State"), received a report indicating that R.O. had left her two children, R.J. and M.J., with their grandmother without providing for the children's basic needs, including medication, and that R.O.'s whereabouts were unknown. R.J. was nine years old at the time, and M.J. was seven. The children's father, E.J., had been deported to Mexico and was unavailable.

The State eventually was able to contact R.O. and requested that she submit to a random drug screen due to reports that she had used methamphetamines. R.O. submitted to the drug screen several days later, and the drug screen yielded positive results.

The trial court signed an instanter order on July 24, 2014, placing the children in the temporary custody of the State, and the children were placed in a foster home. On July 25, 2014, the State filed a petition alleging that R.J. and M.J. were neglected children in need of care in accordance with La.Ch.Code art. 606. At a continued custody hearing on the same date, the children were maintained in the State's custody, subject to supervised visitation by R.O.

R.O. signed a case plan dated August 19, 2014. The case plan required her to secure and maintain safe and clean housing for a period of six months, pay $50

---

[1] Initials of the parties are used in this matter pursuant to Uniform Rules, Courts of Appeal – Rules 5-1 and 5-2.

per month for each month the children were in custody, attend and complete substance abuse assessment and treatment, submit to random drug screens, participate in a mental health evaluation and treatment, participate in parenting classes, maintain contact with R.J. and M.J. as outlined in a visitation plan, cooperate with the State, and make herself available for agency contact.

Following a hearing on October 24, 2014, the children were adjudicated in need of care. A case review hearing was held on January 8, 2015, after which the trial court maintained the children in the State's custody. At the permanency hearing on July 14, 2015, the trial court accepted the State's recommendation to change the children's primary case plan goal from reunification to adoption.

On December 18, 2015, the State filed a petition seeking to terminate R.O.'s and E.J's parental rights as to R.J. and M.J. Another case review hearing was held January 5, 2016, wherein the trial court approved the December 29, 2015 case plan. Trial on the State's petition to terminate parental rights was held on May 3, 2016. The trial court concluded that the State met its burden of proof under La.Ch.Code art. 1015 as to both R.O. and E.J. and terminated their parental rights. The trial court further certified R.J. and M.J. as eligible for adoption.

The mother, R.O., appeals. In her sole assignment of error, she asserts that the trial court erred in terminating her parental rights and asks this court to reinstate the child in need of care proceedings. She argues that the State failed to sufficiently prove (1) her lack of substantial compliance with the case plan and/or (2) a reasonable lack of expectation of significant improvement in her condition or conduct in the near future.

## ANALYSIS

**Burden of Proof and Standard of Review:**

The version of La.Ch.Code art. 1015(5) applicable to this case[2] provided the following as grounds to terminate parental rights:

> Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

In *State ex rel. D.H.L.*, 08-39, pp. 4-5 (La.App. 3 Cir. 4/30/08), 981 So.2d 906, 910 (footnotes omitted), we discussed the State's burden of proof and our standard of review in connection with termination of parental rights proceedings as follows:

> Our supreme court has recognized that the gravity of terminating parental rights requires our courts to impose a stricter standard of proof than the preponderance of the evidence standard; rather, the State must prove by clear and convincing evidence at least one of the statutory grounds contained in La.Ch.Code art. 1015 in order to terminate a parent's rights. *See State ex rel. J.M.*, 02-2089 (La. 1/28/03), 837 So.2d 1247; La.Ch.Code art. 1035(A). "Further, even upon finding that the State has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child's best interests." *State ex. rel. J.M.*, 837 So.2d at 1253; *see also* La.Ch.Code art. 1037(B).
>
> An appellate court cannot set aside a juvenile court's findings of fact regarding the termination of parental rights unless it is manifestly erroneous or unless those findings are clearly wrong. *In re A.J.F.*, 00-948 (La.6/30/00), 764 So.2d 47; *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

In *Interest of CLS*, 94-531, pp. 5-6 (La.App. 3 Cir. 11/2/94), 649 So.2d 532, 536 (internal citations omitted), we explained:

---

[2] Louisiana Children's Code Article 1015 was amended, effective August 1, 2016, to add conviction of a sex offense as a ground for termination as paragraph 1015(3), thereby changing the number of former Article 1015(5) to 1015(6).

Proof by clear and convincing evidence requires a party to persuade the trier of fact that the fact or causation sought to be proved is highly probable, i.e. much more probable than its non-existence. This burden is an intermediate one between the burden of proof by a preponderance of the evidence and the burden of proof beyond a reasonable doubt. Proof by clear and convincing evidence requires more than a "preponderance" of the evidence, the traditional measure of persuasion, but less than "beyond a reasonable doubt," the stringent criminal standard.

## Compliance with the Case Plan

Louisiana Children's Code Article 1036(C) provides that the factors indicating a parent's failure to comply with a case plan may include one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

On appeal, R.O. argues that the State failed to prove by clear and convincing evidence that she failed to comply with her case plan. R.O. admits in her brief that her "biggest difficulty was completing all of the substance abuse treatment requirements." However, she argues that because she completed inpatient treatment at Acadiana Recovery Center ("ARC") in January 2015, maintained

sobriety for an extended period of time, maintained adequate housing, completed the required parenting course, maintained appropriate contact with the State, and visited with the children until the latter part of the summer of 2015, we should reverse the trial court's ruling.

R.O.'s case worker, Bobby Bernard, testified at trial. He indicated that after several "diluted" drug screens and then a positive drug screen in September of 2014, R.O. was referred for an assessment at New Iberia Addictive Disorders Clinic, but failed to appear for several scheduled appointments. At the January 2015 review hearing, the trial court ordered R.O. to attend inpatient treatment, and she was detained at St. Martin Correctional Facility until a bed became available at ARC. She completed a twenty-eight day inpatient treatment program and was discharged on February 18, 2015.

Upon R.O.'s discharge from ARC, her counselor had recommended that she participate in an intensive outpatient program or a six to nine month program through Lafayette Correctional Center; however, R.O. did not follow through with these recommendations. According to Mr. Bernard, he referred R.O. to Keys for Sober Living for intensive outpatient treatment in April of 2015, but R.O. refused to participate in the program. R.O. additionally failed to attend appointments scheduled for her at Lafayette Addictive Disorders Clinic ("LADC") on May 27, 2015; July 20, 2015; August 3, 2015; and August 6, 2015.

At trial on May 3, 2016, R.O. testified that she had begun intensive outpatient treatment at LADC three weeks earlier. She admitted that she never provided Mr. Bernard with any indication that she had attended treatment until the day before trial. Mr. Bernard testified that R.O. indicated to him that she believed the treatment was "boring" and "a joke."

5

Records reflecting R.O.'s drug screens were accepted into evidence. She had drug screens reflecting positive results for amphetamines, methamphetamines, cocaine, and/or opiates on the following dates: July 17, 2014; September 30, 2014; November 20, 2014; December 12, 2014; July 28, 2015; December 15, 2015; and December 29, 2015. She had negative screens in April and June of 2015, and also on January 8, 2015. In addition, Mr. Bernard testified that R.O. admitted that she had a positive drug screen during the three-week period she received outpatient treatment at LADC.

There was also evidence that the State was unable to contact R.O. to submit to a drug screen on the following dates: August 3, 2015; August 20, 2015; September 8, 2015; September 10, 2015; September 22, 2015; November 22, 2015; December 9, 2015; March 8, 2016; April 6, 2016; and April 22, 2016. R.O. testified that she had not undergone any drug screens for the State since January of 2016, because she "was not communicating with [Mr. Bernard]."

With respect to visitation with R.J. and M.J, Mr. Bernard testified that R.O. was compliant with the twice-per-month visitation schedule at the beginning of the case, but then her visitations became "sporadic" around the end of 2015. R.O. admitted that her last visit with the children was in September of 2015, which was eight months prior to trial. R.O. also admitted that she never paid the $50 per month in child support as contemplated by her case plan that she had signed.

There was also evidence regarding R.O.'s residences from July of 2014. At the time the children were placed into State custody, R.O. was staying with friends or in hotels. She then maintained housing for four or five months until her court-ordered inpatient treatment in January of 2015. Following her inpatient treatment

6

at ARC, she resided with friends until June of 2015. She then obtained a residence in Breaux Bridge, but was evicted approximately four months later.

R.O. testified that in November of 2015, she began living in a two-bedroom trailer home under a rent-to-own agreement and that her roommate was assisting her with expenses. At the time of trial in May of 2016, she was still living at this residence with her roommate, as well as with R.O.'s adult daughter. R.O. also testified that she had acquired a vehicle two months prior to trial.

With respect to employment, R.O. testified that during the course of the case, she was self-employed and earned income landscaping and doing "odd jobs." Mr. Bernard testified that R.O. never provided proof of income other than her own statement on a tax return indicating landscaping income.

In finding that R.O. had failed to comply with her case plan, the trial court stated:

> This [c]ourt has found that the State has proven by clear and convincing evidence that - - that [R.O.] has failed to attend court-approved scheduled visitation with her children, has failed to contribute to the cost of the children's foster care, [and] has failed to comply with the required programs for treatment and rehabilitation services in her case plan. . . . There were clear times when she tested positive for various drugs. And there was that period of time from July 28th, 2015[,] to now, as far as this Agency is concerned, she has simply failed to show up, convincing me that during that period of time she had continued to use drugs. . . . The Court is not convinced of any permanent housing . . . . [Mr. Bernard] testified numerous times that he would call her and text her when he needed her to take a drug test and she never returned.

We find that the evidence supports the trial court's finding that R.O. failed to comply with her case plan.

**Expectation of Reasonable Improvement**

Louisiana Children's Code Article 1036(D) provides that a

lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

On appeal, R.O. urges us to find that the trial court was manifestly erroneous in finding a lack of reasonable expectation of significant improvement in her condition or conduct. She argues that there was no evidence indicating she had any mental illness, she completed the sixteen-week parenting class, she completed inpatient treatment, she maintained housing, and she maintained extended periods of sobriety. She also notes that, at the time of trial, she had been in intensive outpatient treatment for three weeks and her financial situation had improved.

In its oral reasons for ruling, the trial court stated:

I find that she lacks substantial progress in redressing her problems preventing reunification with her children. What really bothers me is that she has, during - - from July 14th to now, she has basically failed to adequately address her drug use. . . . For the most part, she - - I believe she took drug treatment as a joke. . . . And it was not until this Petition for Termination of Parental Rights was filed in December . . . that this mother finally decided to venture out and receive some sort of treatment.

We find that the record supports the trial court's finding that there was a lack of any reasonable expectation of significant improvement in R.O.'s condition or conduct.

## CONCLUSION

For the reasons set forth above, we affirm the trial court's ruling in this matter.  Costs of this appeal are assessed to Appellant, R.O.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.

9