# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 15-497

### STATE IN THE INTEREST OF A.R. AND A.M.

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC2013-871
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**JAMES T. GENOVESE
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Jane Hogan
15th Judicial Public Defender's Office
Post Office Box 3622
Lafayette, Louisiana 70502
(337) 232-9345
COUNSEL FOR DEFENDANT(MOTHER)/APPELLANT:
      A.M.**

Tamara D. Rahim
Leah Antoinette Beard
825 Kaliste Saloom Road
Brandywine 3, Room 150
Lafayette, Louisiana 70508
(337) 262-2250
COUNSEL FOR APPELLEE:
    State of Louisiana,
    Department of Children and Family Services

Franchesca Hamilton-Acker
Acadiana Legal Services
1020 Surrey Street
Post Office Box 4823
Lafayette, Louisiana 70502-4823
(337) 237-4320
COUNSEL FOR APPELLEES/MINOR CHILDREN:
    A.M. and A.R.

Lashonda Derouen
425 W. Vermilion Street
Lafayette, Louisiana 70501
(337) 889-5680
COUNSEL FOR DEFENDANT(FATHER)/APPELLEE:
    A.R.

Keith Stutes
District Attorney – Fifteenth Judicial District
Tracy Davenport-McGraw
Assistant District Attorney
Post Office Box 3306
Lafayette, Louisiana 70502
(337) 232-5170
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

A.M.,[1] the biological mother of the minor children, A.R. and A.M., appeals the judgment of the trial court terminating her parental rights and certifying the minor children eligible for adoption. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The minors, A.R.,[2] born August 17, 2011, and A.M,[3] born May 5, 2010, were placed in the custody of the State of Louisiana, Department of Children and Family Services (DCFS), on September 6, 2013, when their mother, A.M., was arrested for possession of schedule II and III narcotics and two counts of possession of controlled substances in the presence of a minor.[4] A.R., the father of the children, could not be located at the time of their removal.

On September 30, 2013, the State filed a petition against A.M. and A.R., charging them with neglect of the minor children. Both parents were in court on December 10, 2013, for the adjudication hearing and stipulated that the children were in need of care. Case plans were established, and permanency and case review hearings were held March 11, 2014, June 24, 2014, and December 9, 2014. The case plan goals were originally reunification; however, due to the lack of parental compliance, the goals were changed to adoption at the hearing on June 24, 2014.

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties will be used to protect and maintain the privacy of the minor children involved in this proceeding.

[2]The biological father of A.R. bears the same initials.

[3]The biological mother of A.M. bears the same initials.

[4]DCFS was previously involved with A.M. in 2012, but that case was closed due to non-compliance.

On November 13, 2014, the State filed a Petition to Terminate Parental Rights and Certification for Adoption. Following a trial on March 10, 2015, and after the children had spent eighteen months in the care of the DCFS, the parental rights of A.M. were terminated. The trial court signed a Judgment of Termination of Parental Rights and Certification of Adoption on April 23, 2015, terminating the parental rights of A.M. The trial on the termination of A.R's parental rights was continued. It is only the termination of A.M.'s parental rights that is before this court on appeal.

## ASSIGNMENT OF ERROR

In her sole assignment of error, A.M. contends that:

The juvenile court erred in terminating the parental rights of A.M. because the agency failed to show by clear and convincing evidence that A.M. had failed to substantially comply with her case plan, that there was no reasonable likelihood of compliance in the near future, and that termination was in the best interest of the child[ren].

## LAW AND DISCUSSION

In *State in the Interest of K.V. & K.V.*, 14-163, p. 3 (La.App. 3 Cir. 11/21/14), 161 So.3d 795, 798, this court discussed the appropriate standard of review relative to the termination of parental rights, stating as follows:

"We review a trial court's determination as to whether parental rights should be terminated according to the manifest error standard of review." *State in Interest of M.A.N.*, 12-946, p. 3 (La.App. 3 Cir. 12/28/12), 106 So.3d 288, 290-91.

Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights. Although the State need only establish one ground for termination, the trial court must also find that the termination is in the best interest of the child in order to meet the statutory requirement of La.Ch.Code art. 1035(A), which requires that grounds for termination be proven by clear and convincing evidence.

*State in the Int. of J.K.G.*, 11-908, pp. 5-6 (La.App. 3 Cir. 1/11/12), 118 So.3d 10, 14-15.

As grounds for the termination of A.M.'s parental rights, the State cited both La.Ch.Code art. 1015(4) and 1015(5). Louisiana Children's Code Article 1015 sets forth the statutory grounds for an involuntary termination of parental rights, providing, in relevant part, as follows:

> The grounds for termination of parental rights are:
>
> (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
>
> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and[,] despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Additionally, La.Ch.Code art. 1036 lists evidence that may be introduced to establish a parent's lack of compliance with a case plan and evidence that there is no reasonable expectation of significant improvement, providing as follows:

> C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> (1) The parent's failure to attend court-approved scheduled visitations with the child.

3

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

The requirements of A.M.'s case plan included: 1) maintain adequate housing which was to be free from drugs and criminal activity; 2) secure and maintain a source of income; 3) submit at least two job applications per week; 4) pay at least $50 per a month in child support; 5) submit to home visits; 6) submit to a mental health assessment and follow all recommendations; 7) submit to and

4

comply with all recommendations relative to a substance abuse assessment; 8) submit to random drug screens; and, 9) participate in parenting classes.

Following trial, the trial court signed a judgment terminating the parental rights of A.M. on the following grounds:

> [T]he State of Louisiana, Department of Children and Family Services[,] has met its burden of proof by clear and convincing evidence under Louisiana Children's Code Articles 1015(4) and 1015(5), in regard to the mother, [A.M.]; that greater than one year has elapsed since the children were removed from the parent's custody; that said parent has failed to provide significant contributions to the children's care and support for any six month period; that said parent has failed to substantially comply with her case plan[,] including but not limited to[,] failing to comply with mental health treatment, failing to comply with substance abuse treatment, failing to obtain and maintain stable housing, and failing to address the conditions that lead to the removal of the children; that there is no reasonable expectation of significant improvement in said parent's condition or conduct in the near future; and, that the termination of parental rights is in the best interest of the minor children, [A.M. and A.R.], for the reasons for ruling orally assigned.

The evidence of record established that from the inception of A.M.'s case plan on September 9, 2013, until the termination proceeding, she made virtually no progress in fulfilling the case plan requirements.

On the housing requirement, A.M., with assistance, was able to maintain a home from September 2013 to August 2014 in Youngsville, Louisiana. She was evicted in August 2014, and her whereabouts remained unknown until January 2015. In January 2015, she provided an address, also in Youngsville; but, when home visits were attempted, no one would answer the door.

A.M. also failed to maintain a source of income and to provide verification of having submitted job applications. Although A.M. claimed to be doing odd jobs on occasion, she failed to provide any verification of income, employment, or application for employment, as was required by her case plan.

A.M.'s case plan also required her to make a $50 monthly parental contribution. Despite her claim of working odd jobs, A.M. failed to make any of the required parental contributions from the time her children were removed from her care.

A.M. also missed the majority of her visits with her children. The case worker testified that before trial in March 2015, A.M. visited with one child on February 20, 2015. Prior to that, her visits were on December 5, 2014, when she did not stay for the entire visit, and on June 6, 2014. Out of twenty-eight total scheduled visits, A.M. was present for only seven.

The case plan requirement of submitting to a mental health assessment was also not met. Although arrangements were made, A.M. did not attend numerous appointments scheduled with Tyler Behavioral Health. A.M. claimed to have seen Dr. Robin in St. Martinville, Louisiana, but she never provided any verification thereof. Additionally, the case worker was never able to locate this doctor.

A.M. also failed to undergo a substance abuse assessment. According to the case worker, on at least three occasions, she scheduled appointments for A.M., but A.M. did not attend. On one occasion, A.M. told the case worker that she had a scheduled appointment; however, when the case worker called to verify this information, she learned that no appointment had been scheduled.

A.M. was referred to more than one agency for parenting classes. She was terminated from the first agency due to her non-compliance. According to the case worker, "[t]he case manager wasn't able to get in contact with her, and she wasn't making herself available for home visits." A.M. was then referred to a second agency, but she never participated in any of the classes offered by that agency.

Finally, the third agency terminated its services because A.M. again failed to attend its classes. A.M., therefore, failed to participate in the requisite parenting classes.

Notably, A.M. has a criminal history; and, at the time of the termination hearing, she was on probation. She had been incarcerated in April 2014 for failure to appear on charges of possession of drug paraphernalia. She was then released and placed on probation. A.M. was arrested again on September 9, 2014, on three bench warrants and a charge of possession of marijuana and remained incarcerated until November 11, 2014. She also had a detention hold from St. Martin Parish, where she was transported upon her release. A.M. failed to comply with the conditions of her probation and, at the time of the hearing, had active bench warrants for her arrest.

A.M. was also required by her case plan to submit to drug testing. She tested positive for drugs on more than one occasion, and, on several occasions, the results were deemed positive due to her failure to comply and have the tests performed.

While admitting that she "did not comply with portions of her case plan," A.M. argues that "she did maintain adequate and stable housing for the majority of her case plan," that she "submitted to drug screens and tested negative[,]" and that she visited with her children on occasion. However, the record reflects that A.M.'s efforts were minimal at best, and she made no significant progress with regards to those elements of her case plan. We agree with the trial court that A.M. failed to substantially comply with the requirements of her case plan.

A.M. also argued that her incarceration limited the time she had available to satisfy her case plan. However, this court has stated the following concerning a parent's incarceration relative to a termination of parental rights proceeding:

7

> Imprisonment is not an excuse to escape parental obligations. *State ex rel. C.M.O.*, 04-1780 (La.App. 4 Cir. 4/13/05), 901 So.2d 1168. Incarceration is not a defense to failure to support or maintain contact with one's children in a termination of parental rights case, particularly because incarceration results from one's actions. *State ex rel. M.H. v. K.W.H.*, 40,332 (La.App. 2 Cir. 9/23/05), 912 So.2d 88.

*State in the Interest of O.L.R.*, 13-616, p. 5 (La.App. 3 Cir. 11/6/13), 125 So.3d 569, 573. This court opined that incarceration of a parent is the result of his/her own "conduct and actions" and may not be used "as an excuse for abandoning [a child] or failing to substantially comply with [a] case plan." *Id.* This is certainly true in the case of A.M., who made virtually no effort to comply with her case plan, even during the time that she was not incarcerated and had the opportunity to do so.

In brief, A.M. also emphasizes that in order for the State to meet its burden of proof in this case, "the State needed to show not only a lack of substantial parental compliance with a case plan, but that there is <u>no reasonable expectation of significant improvement in [her] condition or conduct in the near future.</u>" She argues that "[t]wo weeks prior to the termination hearing, [she] was sober, visiting with her children, and in contact with the agency." Thus, she concludes that there was "a reasonable expectation that [she] would have continued to show improvement in her condition in the near future." We disagree.

Notably, A.M. chose not to be present at the termination hearing. Since the children were placed in the custody of DCFS, A.M. put forth little effort and made virtually no progress in fulfilling the requirements of her case plan. Moreover, she had made no effort whatsoever to address her substance abuse problem, which is what precipitated her children being taken from her custody. In fact, she failed drug screens and did not submit to several drug screens. A number of services

8

were offered to A.M., but she failed to take advantage of those services on more than one occasion. She has a criminal history, not all of which has been resolved, and she faces additional jail time. Notably, she did nothing in furtherance of her case plan until just two weeks prior to the trial, and then she did not appear at trial. Given these facts, we find the record supports the trial court's conclusion that there was no reasonable expectation for improvement in the near future.

Lastly, the best interest of the minor children must be considered. Since the children were placed in the custody of DCFS, they have resided with their maternal grandmother, along with three of their siblings.[5] The children are doing well in this environment, and their maternal grandmother is willing to adopt them. The children are currently three and four years of age. Although the evidence established that A.M. has a bond with the children, they also enjoy a very good relationship with their maternal grandmother with whom they had lived, along with their siblings, for approximately eighteen months up until the time of trial. According to the evidence, they have adjusted well living with their grandmother and their siblings, and "[t]hey are happy and comfortable."

> In termination proceedings, the court must carefully balance the interests of the children and the interests of the parents. *State ex rel. J.M.*, 02-2089, p. 8 (La.1/28/03), 837 So.2d 1247, 1252. While a parent has a natural fundamental interest in the continuing companionship, care, and custody of their children, the child has a profound interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term and continuous relationships found in a home with proper parental care. *State ex rel. L.B. v. G.B.B.*, 02-1715, p. 4 (La.12/4/02), 831 So.2d 918, 921; *State ex rel. G.J.L.*, 00-3278, p. 6 (La.6/29/01), 791 So.2d 80, 85; *Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 102 S.Ct.

---

[5]When the children were originally taken into the custody of DCFS, they were placed in another home for approximately two weeks before being sent to live with their grandmother.

> 3231, 73 L.Ed.2d 928 (1982). In balancing these interests, courts have consistently found that the interest of the child is paramount over that of the parent. *State ex rel. G.J.L.*, 00-3278 at p. 6, 791 So.2d at 85.

*State ex rel. D.D.M.*, 07-1017, pp. 7-8 (La.App. 5 Cir. 3/25/08), 983 So.2d 141, 145.

*State in the Interest of A.G.B.*, 13-902, p. 6 (La.App. 3 Cir. 2/12/14), 153 So.3d 1077, 1081, *writ denied*, 14-542 (La. 4/11/14), 138 So.3d 610.

Based upon our thorough review of the record, we find that the trial court did not manifestly err and was not clearly wrong in ruling that the State had satisfied its burden of proof as set forth in La.Ch.Code art. 1015. Finally, we find no manifest error in the trial court's determination that it was in the best interest of the minor children that the parental rights of A.M. be terminated and that the children be certified for adoption.

## **DECREE**

For the reasons assigned, the judgment of the trial court terminating A.M.'s parental rights as to A.R. and A.M. is affirmed. Costs of this appeal are assessed to A.M.

**AFFIRMED.**

10