NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-972

STATE OF LOUISIANA

IN THE INTEREST OF

H.B.

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. J-7877
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of D. Kent Savoie, Van H. Kyzar, and David E. Chatelain,[*] Judges.

**AFFIRMED.**

---

[*] Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

Gilbert J. Aucoin
Attorney at Law
153 S. Court Street
Ville Platte, LA 70586
(337) 363-2223
COUNSEL FOR APPELLANT:
      D.M.B.

Julhelene E. Jackson
Assistant District Attorney
Thirteent Judicial District
Post Office Drawer 780
Ville Platte, LA 70586
(337) 363-3438
COUNSEL FOR APPELLEE:
      State of Louisiana

Chantel Conrad
825 Kaliste Saloom Road
Brandywine III, Suite 150
Lafayette, LA 70508
(337) 262-2250
COUNSEL FOR APPELLEE:
      State of Louisiana, Department of Children and Family Services

Jessica Cantave
Acadiana Legal Services
Post Office Box 4823
Lafayette, LA 70502
(337) 237-4320
COUNSEL FOR APPELLEE:
      H.B.(child)

**SAVOIE, Judge.**

The mother, D.M.B.,[2] appeals the termination of her parental rights as to her minor child, H.B. For the following reasons, we affirm the trial court's ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 12, 2015, the State of Louisiana, Department of Children and Family Services ("the State"), received a report alleging D.M.B.'s lack of adequate supervision of her child H.B. and that the home had an inadequate food supply. H.B. was six years old at the time. D.M.B. was subsequently arrested on May 26, 2015, for possession and use of illegal drugs while she was on active probation for a prior offense. D.M.B's nineteen-year-old son, who occasionally resided with D.M.B., was also arrested on that same day. H.B. was left with no other legal caretaker because his father had previously passed away.

On May 26, 2015, the trial court issued an oral instanter order placing H.B. in the temporary custody of the State, which it confirmed in writing on May 27, 2015, at the continued custody hearing. On May 29, 2015, the State filed a petition asking the court to adjudicate H.B. as a child in need of care. A continued custody hearing was held on May 29, 2015, wherein the trial court maintained the State's custody of H.B.

An answer hearing was held on July 7, 2015, at which time, the trial court adjudicated H.B. as a child in need of care, approved the case plan submitted by the State, and maintained custody of H.B. with the State. The case plan reflected that H.B. had been placed with his paternal aunt and uncle and noted a goal of "reunification with concurrent goal of adoption." The case plan contemplated that D.M.B. would obtain and maintain suitable housing and employment, pay a parental contribution in the amount of $25 per month, make herself available for

---

[2] Initials of the parties are used in this matter pursuant to Uniform Rules, Courts of Appeal – Rules 5-1 and 5-2.

quarterly visits, submit to random drug screens, schedule substance abuse and mental health assessments and comply with any recommendations, develop a relapse plan to assist her with obtaining and maintaining sobriety, and obtain a sponsor and attend support groups to assist in maintaining sobriety.

A case review hearing was held on December 15, 2015, wherein the trial court maintained the state's custody of H.B. Another case review hearing was held on April 12, 2016, wherein the trial court maintained the State's custody of H.B. and approved a March 29, 2016 case plan reflecting a goal of adoption with concurrent goal of reunification. The case plan required D.M.B. to obtain housing and employment, pay a parental contribution in the amount $25 per month, attend scheduled visitations, submit to random drug screens, attend substance abuse and mental health assessments, develop a relapse plan, obtain a sponsor, and attend support groups.

On June 20, 2016, the State filed a petition seeking to terminate D.M.B.'s parental rights and to certify H.B. as eligible for adoption. The petition alleged that "greater than one year has elapsed since the child was removed from the parent's custody, there has been no substantial parental compliance with the case plan for services, . . . [and] there is no reasonable expectation of significant improvement in the parent's condition in the near future[.]" It also alleged that the best interests of H.B. required termination of D.M.B.'s parental rights. D.M.B. filed an answer on July 18, 2016.

Following a trial held September 21, 2016, the trial court rendered judgment terminating D.M.B's parental rights and certifying H.B. as eligible for adoption, finding:

> [T]hat greater than one year has elapsed since the child was removed from the [parent's] custody; that said [parent has] failed to substantially comply with [her] case plans including but not limited to failing to complete substance abuse treatment, demonstrating a pattern of repeated incarceration which has rendered her unable to care for the

2

immediate and continuing physical or emotional needs of the child for extended periods of time, and a lack of substantial improvement in redressing the problems preventing reunification; that there is no reasonable expectation of significant improvement in said [parent's] condition or conduct in the near future; and that the termination of parental rights is in the best interest of the minor child[.]

D.M.B. appeals asserting the following assignment of error:

The trial Court committed manifest error in terminating her parental rights by finding that the mother was not in substantial compliance with her case plan; that there was no reasonable expectation of significant improvement in the mother's condition; by finding the State had proven that the mother's parental rights should be terminated based upon [La.Ch.Code] [a]rt. 1015(5) and [a]rt[.] 1036; and finding that it was in the best interest of the child that the mother's parental rights be terminated.

## ANALYSIS

### Burden of Proof and Standard of Review:

The version of La.Ch.Code art. 1015(5) applicable to this case[3] provided the following as grounds to terminate parental rights:

Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

In *State ex rel. D.H.L.*, 08-39, pp. 4-5 (La.App. 3 Cir. 4/30/08), 981 So.2d 906, 910 (footnotes omitted), we discussed the State's burden of proof and our standard of review in connection with termination of parental rights proceedings as follows:

Our supreme court has recognized that the gravity of terminating parental rights requires our courts to impose a stricter standard of proof than the preponderance of the evidence standard; rather, the State must prove by clear and convincing evidence at least one of the statutory grounds contained in La.Ch.Code art. 1015 in order to terminate a parent's rights. *See State ex rel. J.M.*, 02-2089

---

[3] Louisiana Children's Code Article 1015 was amended, effective August 1, 2016, to add conviction of a sex offense as a ground for termination as paragraph 1015(3), thereby changing the number of former Article 1015(5) to 1015(6).

(La. 1/28/03), 837 So.2d 1247; La.Ch.Code art. 1035(A). "Further, even upon finding that the State has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child's best interests." *State ex. rel. J.M.*, 837 So.2d at 1253; *see also* La.Ch.Code art. 1037(B).

An appellate court cannot set aside a juvenile court's findings of fact regarding the termination of parental rights unless it is manifestly erroneous or unless those findings are clearly wrong. *In re A.J.F.*, 00-948 (La.6/30/00), 764 So.2d 47; *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

In *Interest of CLS*, 94-531, pp. 5-6 (La.App. 3 Cir. 11/2/94), 649 So.2d 532, 536 (internal citations omitted), we explained:

Proof by clear and convincing evidence requires a party to persuade the trier of fact that the fact or causation sought to be proved is highly probable, i.e. much more probable than its non-existence. This burden is an intermediate one between the burden of proof by a preponderance of the evidence and the burden of proof beyond a reasonable doubt. Proof by clear and convincing evidence requires more than a "preponderance" of the evidence, the traditional measure of persuasion, but less than "beyond a reasonable doubt," the stringent criminal standard.

## Compliance with the Case Plan

Louisiana Children's Code Article 1036(C) provides that the factors indicating a parent's failure to comply with a case plan may include one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

The State is only required to establish one of these statutory grounds. *State ex. rel. ML*, 95-45 (La. 9/5/95), 660 So.2d. 830.

Ms. Shameka Alexander, who was the child welfare supervisor for the State, was the only witness called to testify during the trial on September 21, 2016. She stated that D.M.B. had been incarcerated the entire duration of the matter up until the week prior to trial and that D.M.B. would continue to be on probation until 2021, subject to possible future incarceration should she violate the terms of her probation. Ms. Alexander additionally testified that after D.M.B.'s release, D.M.B. was temporarily residing with her grandmother, but that her grandmother's house had inadequate space for D.M.B. or H.B. to reside. She noted that D.M.B. would sleep on the floor. Ms. Alexander also testified that D.M.B. did not provide support payments for the care of H.B. as contemplated by the case plan, despite the fact that D.M.B. was employed while incarcerated through a work-release program. D.M.B. had not secured permanent employment at the time of trial. In addition, Ms. Alexander stated that D.M.B. had not verified that she could maintain sobriety outside of a controlled environment, and Ms. Alexander was concerned with D.M.B.'s lack of independent housing and her financial instability.

The entire record from the child in need of care proceeding was accepted into evidence, as well as copies of the case plans at issue.

In terminating D.M.B.'s parental rights, the trial court stated in its oral reasons:

> The problem we have here is [D.M.B.] had a right on [May] the 12, 2015[,] to make a decision[,] and she apparently made a bad one because at that time her home was observed to have minimum food supply. The agency received a report of that. Not long after on 5-26[,] she was arrested for possession of drug paraphernalia, possession of schedule II narcotic crystal meth . . . , possession of drugs in a school zone, [and] illegal use of control[led] dangerous substance in the presence of a person under the age of seventeen. . . . [D.M.B.] at the

time was on [a]ctive [p]robation when she decided to apparently use these drugs. . . . . The child has a right to have a home safe, stable adequate home. The child has a right to have a caretaker that will make decisions regarding his welfare and his safety. He has a right to have those caretaker's decisions made immediately. . . . Unfortunately, we [are] on a time limit[;] everybody whose child is removed[,] we have a certain amount of time. . . .[A]t the end of that day[,] the child's rights are going to be enforced and it's right to have [a] stable adequate environment by nourishing, capable caregiv[er] is paramount[.] . . . [D.M.B.], through her own action could not comply with the case plan and has not contributed[.]

On appeal, D.M.B. argues that the trial court's finding that she failed to comply with her case plan was manifestly erroneous because incarceration prevented her from obtaining housing. She also suggests that she purchased and gave toys or other items to H.B. when he visited her, and therefore, she was compliant with the parental contribution requirement.

In *State ex rel. A.R.*, 15-497, p. 8 (La.App. 3 Cir. 11/4/15), 178 So.3d 280, 286 (alternation in original), this court addressed, and rejected, a parent's defense that her incarceration limited the amount of time available to satisfy a case plan, stating:

> Imprisonment is not an excuse to escape parental obligations. *State ex rel. C.M.O.*, 04-1780 (La.App. 4 Cir. 4/13/05), 901 So.2d 1168. Incarceration is not a defense to failure to support or maintain contact with one's children in a termination of parental rights case, particularly because incarceration results from one's actions. *State ex rel. M.H. v. K.W.H.*, 40,332 (La.App. 2 Cir. 9/23/05), 912 So.2d 88. 1168.

*State in the Interest of O.L.R.*, 13-616, p. 5 (La.App. 3 Cir. 11/6/13), 125 So.3d 569, 573. This court opined that incarceration of a parent is the result of his/her own "conduct and actions" and may not be used "as an excuse for . . . failing to substantially comply with [a] case plan." *Id.*

In addition, while Ms. Alexander testified that D.M.B. may have provided H.B. with various "items" when he visited, the extent of those items is unknown and insufficient to establish compliance with the support obligation contemplated by the case plan.

6

As noted by the trial court, allegations of D.M.B.'s neglect and inability to provide for H.B. resulted in the State initially becoming involved with D.M.B. Shortly thereafter, D.M.B. was incarcerated while on active probation, and H.B. was removed from the home. The evidence supports a finding that these conditions persisted at the time of trial. D.M.B. had not obtained adequate housing and there was no evidence of her ability to adequately provide for H.B. In addition, D.M.B. was on active probation at the time of trial, just as she was when H.B. was initially removed from her custody, and there is no evidence that would require a finding that D.M.B. could maintain sobriety outside of a controlled facility. We, therefore, conclude that the evidence supports the trial court's finding that D.M.B. failed to comply with her case plan.

**Expectation of Reasonable Improvement**:

Louisiana Children's Code Article 1036(D) provides that a:

[L]ack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

    (1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

    (2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

    (3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

On appeal, D.M.B. asserts that the trial court was manifestly erroneous in finding that there was no reasonable expectation of significant improvement in her condition or conduct. However, she fails to point to any evidence in the record

supporting her argument. Likewise, we do not find any such evidence that requires a reversal of the trial court's finding in this regard.

## Best Interest of the Child

D.M.B. also suggests on appeal that termination of her parental rights was not in H.B's best interest, but again, she does not direct us to any evidence in the record supporting her position. H.B. has resided with the same family since being removed from D.M.B.'s home; the family is related to H.B.; and the record is replete with evidence indicating that H.B. is doing well with this family under the circumstances. Therefore, the trial court's finding is supported by the record.

## CONCLUSION

For the reasons set forth above, we affirm the trial court's ruling in this matter. Costs of this appeal are assessed to Appellant, D.M.B.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules-Courts of Appeal, Rule 2–16.3.